Filed 2/19/15

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| STATE DEPARTMENT OF PUBLIC HEALTH, | ) ) ) | |
| Petitioner, | ) ) | S214679 |
| v. | ) ) | Ct.App. 3 C072325 |
| THE SUPERIOR COURT OF SACRAMENTO COUNTY, | ) ) ) | Sacramento County |
| Respondent; | ) ) | Super. Ct. No. 34-2012-80001044 |
| CENTER FOR INVESTIGATIVE REPORTING, | ) ) ) | |
| Real Party in Interest. | ) ) | |
| _____ | ) | |

The Center for Investigative Reporting (the Center) is a news organization investigating mistreatment of mentally ill and developmentally disabled individuals in state-owned long-term health care facilities. It filed a Public Records Act request for copies of all the citations issued by the Department of Public Health (DPH) — the agency charged with investigating, licensing, and disciplining long-term health care facilities — to the facilities the Center was investigating.

The Long-Term Care, Health, Safety, and Security Act of 1973 (the Long-Term Care Act) lays out in detail the information that must be included in citations issued by DPH and expressly states that the citations are public records, but that

1

the names of the affected patients or residents must be redacted from the publicly available version of the citation. (See Health & Saf. Code, §§ 1423, 1424, 1429, 1439.) Yet DPH disclosed heavily redacted copies of the citations it had issued to the facilities in question, citing its obligation under another statute not to release confidential information obtained "in the course of providing services" to mentally ill and developmentally disabled individuals. (Welf. & Inst. Code, § 5328; all subsequent statutory references are to the Welfare & Institutions Code unless otherwise indicated.)

The trial court determined that the Long-Term Care Act was the more specific and later-enacted statute and thus trumped section 5328. DPH sought writ relief, and the Court of Appeal issued a writ directing the trial court to vacate its judgment. In so doing, the Court of Appeal agreed with DPH, but only in part. It concluded that because both statutes are remedial statutes designed to protect the same vulnerable population, the two statutory schemes could be harmonized. The Court of Appeal did so by ordering DPH to disclose such information as the Court of Appeal deemed consistent with the common purpose of both statutes while permitting DPH to redact such information as the Court of Appeal deemed inconsistent with that common purpose.

We reverse and remand with instructions for the Court of Appeal to deny the petition. The trial court was correct: The Long-Term Care Act's provisions are the later-enacted provisions, and they announce with detail and specificity the information that must be included in DPH citations in the public record. Because it is both the more specific and the later-enacted statute, the Long-Term Care Act is properly construed as a limited exception to section 5328's general rule of patient and resident confidentiality. Accordingly, DPH citations issued under the Long-Term Care Act are public records and must be disclosed to the Center subject only to the specific redactions mandated by the Long-Term Care Act.

2

## I.

The Center is a nonprofit news organization involved in investigating and reporting on patient abuse in state-owned long-term care facilities operated by the Department of Developmental Services for the benefit of mentally ill and developmentally disabled individuals. The Center is engaged in "ongoing investigation into cases of patient abuse, injury and death at the State's largest developmental centers, the State's handling of the investigations and specifically that of the internal police force, called the Office of Protective Services, charged with protecting this vulnerable population."

In May of 2011, while investigating these matters, a staff reporter employed by the Center filed a written request, pursuant to the Public Records Act (Gov. Code, § 6250 et seq.), requesting copies of all citations issued by DPH since 2002 to the seven largest state-owned and state-operated treatment facilities. DPH issues such citations pursuant to a detailed statutory scheme set out in the Long-Term Care Act.

DPH's response was twofold. First, it informed the Center that DPH was required to maintain citations for only four years. Second, DPH told the Center that any recent responsive records would be "examined and redacted before release in accordance with Welfare and Institutions Code section 5328," which governs patient confidentiality at facilities providing designated services to developmentally disabled and mentally ill patients and residents. As explained in more detail below, section 5328 is part of the Lanterman-Petris-Short Act; a parallel provision is included in the Lanterman Developmental Disabilities Services Act. (See § 4514.) Like the parties and the Court of Appeal, we refer to both acts collectively as the Lanterman Act. When we refer to section 5328, the reference applies equally to section 4514.

3

A month later, DPH produced 55 citations from the years 2007 through 2011. In DPH's own words, the records were "aggressively" redacted. In fact, the redacted citations contained scant information about the violations giving rise to each citation. A representative example is citation number 15-1040-0003490-S. The citation is classified as an "AA" citation, meaning that the patient died as a direct and proximate result of the facility's offense. (Health & Saf. Code, § 1424, subd. (c).) The citation lists two general regulations that were violated: California Code of Regulations, title 22, section 76315, subdivision (a)(4)(B), which requires each patient or resident to have an individual program plan, and California Code of Regulations, title 22, section 76525, subdivision (a)(20), which assures patients and residents the right "[t]o be free from harm, including unnecessary physical restraint or isolation, excessive medication, abuse or neglect." But the substance of the violation is then described as follows: "The facility failed to keep Client 1 free from harm by . . . ." The remainder of the citation, comprising two and a half pages of text, is completely redacted.

An unredacted copy of one citation the Center obtained from a confidential source shows the kind of information that DPH redacted. Citation number 15-0788-0008629-F describes an incident in which one-third of the patients in one unit at the Sonoma Developmental Center sustained injuries consistent with being unnecessarily tasered. The citation describes the nature of the injuries sustained by some of the patients and the fact that the patients had limited or no ability to communicate verbally. By contrast, the redacted copy of the report says nothing more than that a violation of Code of Federal Regulations, title 42, part 483.420, subdivision (a)(5) — "Protection of clients' rights" — occurred.

The Center's legal counsel wrote a letter to DPH arguing that the redactions were not legally justified. DPH responded with an email maintaining that the redactions were required by Welfare and Institutions Code sections 4514 and

4

5328.15. The Center responded by filing a petition for writ of mandate in the superior court seeking an order that DPH disclose the redacted material pursuant to the Public Records Act.

The trial court said it was "called upon in this case to resolve an apparent conflict between the Lanterman Act's prohibition against disclosure of records obtained in the course of providing mental health or developmental services, and the Long-Term Care Act's requirement that citations issued to long-term health care facilities be open to public inspection." It concluded that the two statutes could not be reconciled and that the Long-Term Care Act's mandate that DPH citations be made public with minimal redaction trumped the Lanterman Act's confidentiality provisions because the Long-Term Care Act was the more specific statute. DPH filed a petition for writ of extraordinary mandate.

The Court of Appeal acknowledged a conflict between the Long-Term Care Act and the Lanterman Act, but determined that the statutes could be harmonized. It observed that "the Lanterman Act and the Long-Term Care Act apply to the same population and seek the same purpose — to promote and protect the health and safety of mental health patients. But the two acts effectuate this common purpose from opposite directions. The Lanterman Act effectuates this purpose by ensuring the confidentiality of mental health records — this encourages persons with mental problems to seek, accept and undergo treatment and to be open and candid in treatment. The Long-Term Care Act effectuates this purpose, as relevant here, by making citations for violations of patient care standards publicly accessible, so the public can oversee what is happening in these facilities." The "congruence of population and purpose, and this effectuation of purpose from opposite directions, creates a complementarity of method to effectuate the common purpose for this common population. In this way, these confidentiality and public accessibility provisions can be harmonized."

5

The Court of Appeal undertook this harmonization by evaluating each category of information that the Long-Term Care Act requires to be included in citations. The court then determined whether disclosing each type of information would "giv[e] [e]ffect to [b]oth the Lanterman Act and the Long-Term Care Act." Applying this test, the Court of Appeal determined that, in light of the Lanterman Act's purpose of protecting confidentiality, the following information should be redacted from DPH citations issued under the Long-Term Care Act before they are made public: "any names contained in the citations, other than those of the authorized inspectors and investigators specified in section 1439 of the Long-Term Care Act," and "[t]he patient's or resident's mental, physical, and medical conditions, history of mental disability or disorder, as well as the risk the violation presents to that mental and physical condition." By contrast, DPH must release the following information in light of the Long-Term Care Act's policy favoring publication of citations: "*what* was the harm, *what* was the abuse, *what* was the lack of respect or dignity afforded, and *what* was the action that the facility did or failed to do," " 'the *particular place or area of the facility* in which [the violation] occurred,' " "the 'good faith efforts exercised by the facility to prevent the violation from occurring' [citation], and '[t]he licensee's history of compliance with regulations.' "

Justice Hoch dissented. She would have concluded that the two statutes were in irreconcilable conflict as to what information in a DPH citation can or must be released to the public. She would have resolved the conflict by concluding that the Long-Term Care Act prevailed because its relevant provisions are more specific and later enacted than section 5328. We granted review.

## II.

We begin by describing the two statutory schemes at issue.

## A.

The Long-Term Care Act was enacted in 1973 with the purpose of "establish[ing] (1) a citation system for the imposition of prompt and effective civil sanctions against long-term health care facilities in violation of the laws and regulations of this state, and the federal laws and regulations as applicable to nursing facilities as defined in subdivision (k) of Section 1250, relating to patient care; (2) an inspection and reporting system to ensure that long-term health care facilities are in compliance with state statutes and regulations pertaining to patient care; and (3) a provisional licensing mechanism to ensure that full-term licenses are issued only to those long-term health care facilities that meet state standards relating to patient care." (Health & Saf. Code, § 1417.1.) It makes DPH responsible for licensing, investigating, and sanctioning long-term health care facilities throughout the state. (See *Kizer v. County of San Mateo* (1991) 53 Cal.3d 139, 142 (*Kizer*) [summarizing the DPH's obligations under the Long-Term Care Act].)

The term "long-term health care facility" is defined as any of eight types of licensed care facilities. (Health & Saf. Code, §§ 1418, subd. (a), 1760.) Four of the eight categories of long term care facilities — "[i]ntermediate care facility/developmentally disabled," "[i]ntermediate care facility/developmentally disabled habilitative," "[i]ntermediate care facility/developmentally disabled— nursing," and "[i]ntermediate care facility/developmentally disabled—continuous nursing" (*id.*, § 1418, subd. (a)(3)–(5), (8)) — serve only developmentally disabled persons.

Section 1422 explains the importance of DPH inspections and the procedure for conducting them. It declares that "inspections are the most effective means" of ensuring a high level of care at long-term health care facilities. (Health & Saf. Code, § 1422, subd. (a).) It requires DPH to conduct inspections upon

7

receiving a complaint, and no less frequently than once every two years regardless of whether any complaint has been filed. (*Id.*, § 1422, subd. (b).) If an inspection uncovers any violations of state or federal standards of care, the inspector must recommend a federal enforcement remedy or issue a citation unless the violation is deemed an " 'unusual occurrence.' " (*Id.*, § 1423, subds. (a) & (c).)

Before the Long-Term Care Act was enacted, the only significant sanctions available against a long-term health care facility were misdemeanor criminal charges, injunctions, or suspension or revocation of the facility's license. (Sen. Com. on Health & Welfare, Analysis of Assem. Bill No. 1600 (1973–1974 Reg. Sess.) as amended June 21, 1973, p. 1.) This system was "criticized as too rigid, lacking in intermediate sanctions, and ineffective in producing compliance with standards." (*Ibid.*; see Joint Com. on Aging, Analysis of Assem. Bill No. 1600 (1973–1974 Reg. Sess.) p. 4; Report of Joint Com. on Aging, Rep. Regarding Assem. Bill No. 1600 (1973–1974 Reg. Sess.) 5 Assem. J. (1973–1974 Reg. Sess.) p. 8786 (Joint Committee Report) [describing the available remedies as "either too weak or too severe in nature"].) The Long-Term Care Act also specifically sought to combat the problem that "[t]he Department's reports on nursing homes and their relative compliance with patient health and safety standards were all centralized in Sacramento and, therefore, practically inaccessible to nursing home consumers." (Joint Com. Rep. at p. 8786.)

Although the Long-Term Care Act's inspection and citation process serves to punish by naming and shaming facilities that violate the law, "[t]he focus of the . . . statutory scheme is *preventative*." (*Kizer*, *supra*, 53 Cal.3d at p. 148.) It serves to "protect patients from actual harm, and encourage health care facilities to comply with the applicable regulations and thereby *avoid* imposition of the penalties" that accompany a citation. (*Ibid.*) The Long-Term Care Act, and Health and Safety Code section 1424 in particular, "is designed to protect one of

8

the most vulnerable segments of our population, 'nursing care patients . . . who are already disabled by age and[/or] infirmity,' and hence in need of the safeguards provided by state enforcement of patient care standards." (*California Assn. of Health Facilities v. Department of Health Services* (1997) 16 Cal.4th 284, 295.) "As a remedial statute, section 1424 is to be liberally construed on behalf of the class of persons it is designed to protect." (*Ibid.*)

The Long-Term Care Act details the information that must be included in every citation, and it specifies that citations are public records. It also specifies that the patient's or resident's name must be redacted and is not part of the public record. Section 1423 provides that "[e]ach citation shall be in writing and shall describe with particularity the nature of the violation, including a reference to the statutory provision, standard, rule, or regulation alleged to have been violated, the particular place or area of the facility in which it occurred, as well as the amount of any proposed assessment of a civil penalty. The name of any patient jeopardized by the alleged violation shall not be specified in the citation in order to protect the privacy of the patient. However, at the time the licensee is served with the citation, the licensee shall also be served with a written list of each of the names of the patients alleged to have been jeopardized by the violation, that shall not be subject to disclosure as a public record." (Health & Saf. Code, § 1423, subd. (a)(2).)

Section 1424 provides that DPH's determination of the appropriate penalty, including the specific factors considered, must be made public. In determining the penalty, DPH must consider "all relevant facts . . . including, but not limited to, the following: [¶] (1) [t]he probability and severity of the risk that the violation presents to the patient's or resident's mental and physical condition[,] [¶] (2) [t]he patient's or resident's medical condition[,] [¶] (3) [t]he patient's or resident's mental condition and his or her history of mental disability or disorder[,] [¶] (4)

9

[t]he good faith efforts exercised by the facility to prevent the violation from occurring[,] [¶] (5) [t]he licensee's history of compliance with regulations." (Health & Saf. Code, § 1424, subd. (a).) These "facts considered by the department in determining the amount of the civil penalty shall be documented by the department on an attachment to the citation and available in the public record." (*Id.*, subd. (b).)

Class "AA" and "A" citations — i.e., citations issued for violations that are a proximate cause of the death of a patient or resident or that pose a substantial probability of causing serious physical harm or death (Health & Saf. Code, § 1424, subds. (c), (d)) — "shall be prominently posted for 120 days . . . in a place or places in plain view of the patients or residents in the long-term health care facility, persons visiting those patients or residents, and persons who inquire about placement in the facility." (*Id.*, subd. (a).) The format and content of these public postings are carefully delineated, with specific requirements regarding document formatting and the location where the citations must be posted. (*Ibid.*) Less severe class "B" citations need not be publicly posted, but "shall be made promptly available by the licensee for inspection or examination by any member of the public who so requests." (*Id.*, subd. (b).) It is a separate class "B" violation to fail to comply with these requirements. (*Id.*, subd. (c).)

Finally, the Long-Term Care Act says, "Any writing received, owned, used, or retained by [DPH] in connection with the provisions of this chapter is a public record within the meaning of subdivision (d) of Section 6252 of the Government Code, and, as such, is open to public inspection pursuant to the provision of Section 6253, 6256, 6257, and 6258 of the Government Code." (Health & Saf. Code, § 1439.) Again, the statute emphasizes that the patients' and residents' names must be redacted but does not mention any other redaction. (*Ibid.* ["[T]he names of any persons contained in such records, except the names of duly

10

authorized officers, employees, or agents of the state department conducting an investigation or inspection in response to a complaint filed pursuant to this chapter, shall not be open to public inspection and copies of such records provided for public inspection shall have such names deleted."].)

**B.**

The Lanterman-Petris-Short Act was enacted in 1967. (Stats. 1967, ch. 1667, § 36, p. 4074.) Its stated purposes include "provid[ing] prompt evaluation and treatment of persons with mental health disorders or impaired by chronic alcoholism" (§ 5001, subd. (b)), "encourag[ing] the full use of all existing agencies, professional personnel, and public funds to accomplish these objectives" (*id.*, subd. (f)), and "protect[ing] persons with mental health disabilities and developmental disabilities from criminal acts" (*id.*, subd. (g)).

The relevant provisions here are Welfare and Institutions Code sections 5328 and 4514. Section 5328 provides that "[a]ll information and records obtained in the course of providing services under" enumerated statutory divisions addressing services provided to mentally ill individuals "to either voluntary or involuntary recipients of services shall be confidential. . . ." It further provides that "[i]nformation and records shall be disclosed only in any of the following cases" and then enumerates 25 specific exceptions. The exceptions include, among other things, referrals of patients or residents between qualified professionals, disclosure to approved researchers who sign an oath of confidentiality, disclosure "[t]o the courts, as necessary to the administration of justice" (*id.*, subd. (f)) and disclosure to an insurer when approved by the recipient of services. (*Id.*, subds. (a), (e), & (i).)

As originally enacted, section 5328 contained a much shorter list of exceptions. (See Stats. 1967, ch. 1667, § 36, pp. 4092–4093.) It was reenacted and amended in 1972 (Stats. 1972, ch. 1058, § 2, pp. 1960–1961) and has

11

subsequently been amended several times to expand the list of exceptions. As discussed in more detail below, the Legislature enacted additional exceptions to section 5328's confidentiality rule in 1980, which were codified at Welfare and Institutions Code section 5328.15. (Stats. 1980, ch. 695, § 1, p. 2095.) Section 5328.15 has been amended several times. The most relevant amendment occurred in 2012, when the Legislature authorized disclosure of confidential information, including "unredacted citation report[s]," to any "protection and advocacy agency established pursuant to [Welfare and Institutions Code] Section 4901." (§ 5328.15, subd. (c)(2); see Stats. 2012, ch. 664, § 3.)

Welfare and Institutions Code section 4514 is substantively identical to section 5328. Under section 4514, information and records obtained in the course of providing services to developmentally disabled persons are confidential. This provision was originally subsumed within section 5328, which at the time applied to the records of both mentally ill and developmentally disabled residents and patients. (See *Gilbert v. Superior Court* (1987) 193 Cal.App.3d 161, 168–169.) In 1982, the Legislature moved the protections for developmentally disabled persons to section 4514, where they appear as part of the Lanterman Developmental Disabilities Services Act, a statute addressing services for developmentally disabled persons. (*Ibid.*; see § 4500 et seq.) No substantive change was intended. (See Cal. Health & Welfare Agency, Enrolled Bill Rep. on Sen. Bill No. 1736 (1981–1982 Reg. Sess.) Aug. 23, 1982; Sen. Com. on Health & Welfare, Analysis of Sen. Bill No. 1736 (1981–1982 Reg. Sess.) as introduced Mar. 11, 1982.) Subdivision (v) of section 4514 contains exemptions from the general confidentiality rule that are identical to those provided for mentally ill residents and patients in section 5328.15, subdivision (c)(2). The provisions were enacted simultaneously and have been amended in a parallel manner throughout the years. (See, e.g., Stats. 2012, ch. 664.)

12

Section 5328's confidentiality protections are designed "to encourage persons with mental or alcoholic problems to seek treatment on a voluntary basis." (*County of Riverside v. Superior Court* (1974) 42 Cal.App.3d 478, 481; see *Sorenson v. Superior Court* (2013) 219 Cal.App.4th 409, 447 (*Sorenson*); *In re S.W.* (1978) 79 Cal.App.3d 719, 721 [section 5328 seeks to protect patients from the "embarrassment or more serious consequences" and "undesired publicity" that could result if their having received treatment became public knowledge]; see Sen. Alan Short, attachment to letter to Gov. Ronald Reagan, Aug. 16, 1967, p. 3 [Lanterman Act "provides for the confidentiality of records so that mentally ill persons will not be haunted by unauthorized unnecessary exposure of their medical histories"].) Anyone who knowingly violates section 5328 by releasing confidential information without authorization is subject to a civil action with damages equivalent to the greater of $10,000 or treble the amount of actual damages. (§ 5330, subd. (a).) Anyone who negligently violates section 5328 faces damages equivalent to $1,000 plus actual damages. (*Id.*, § 5330, subd. (b).)

**III.**

Before considering the merits of the Court of Appeal's effort to harmonize the Long-Term Care Act and the Lanterman Act, we must first address a threshold argument. The Center contends that section 5328 does not apply to Long-Term Care Act citations because such citations are not "obtained in the course of providing services" (§ 5328) to developmentally disabled or mentally ill persons. The Center says that an investigation and the resulting citation do not involve providing services, so their content is not governed by section 5328's confidentiality guarantee.

We disagree. Section 5328 renders confidential "[a]ll information and records obtained in the course of providing services" to patients or residents receiving services pursuant to several enumerated statutory divisions. (§ 5328.) It

13

is true that DPH is not a service provider directly regulated by section 5328. But when DPH investigates a facility governed by section 5328, it inevitably relies upon records from the facility in carrying out its investigation. (See Health & Saf. Code, §§ 1420, subd. (a)(2) [the investigator "shall collect and evaluate all available evidence" including "[s]tatements of witnesses," "[f]acility records," and "[o]bserved conditions"], 1421, subd. (a) [similar].) Facility records plainly constitute "information and records obtained in the course of providing services." That this information may then be passed on to the investigator and incorporated into a DPH citation does not change the fact that they are deemed confidential by statute.

The Center relies on *Sorenson*, *supra*, 219 Cal.App.4th 409, *Tarasoff v. Regents of University of California* (1976) 17 Cal.3d 425, 443 (*Tarasoff*), and *Devereaux v. Latham & Watkins* (1995) 32 Cal.App.4th 1571, 1585 (*Devereaux*) in support of its argument that the information in DPH citations is not "obtained in the course of providing services." But none of these cases stands for the proposition that confidential information obtained during a DPH investigation becomes public when an investigator reviews or reproduces it.

*Sorenson* said that section 5328 did not render court transcripts of Lanterman Act commitment proceedings nonpublic. But this was in part because section 5328 specifically provides for disclosure of confidential information " '[t]o the courts, as necessary to the administration of justice.' " (*Sorenson*, *supra*, 219 Cal.App.4th at pp. 444, quoting § 5328, subd. (f).) So court proceedings discussing information obtained in the course of treating a patient or resident are not confidential precisely because section 5328 expressly authorizes release of such information under the circumstances. Here, by contrast, the Center does not argue that any enumerated exemption to section 5328 authorizes disclosure of

14

confidential information obtained in the course of providing services to mentally ill and developmentally disabled patients and residents.

 *Tarasoff* and *Devereaux* are even further afield.  Neither case involved a patient or resident who was alleged to have been receiving treatment under the Lanterman Act at the time the record in question was generated.  (See *Tarasoff*, *supra*, 17 Cal.3d at p. 443 ["[t]he pleadings . . . state no facts showing that the psychotherapy provided to [the patient] by [the hospital] falls under any of [the] programs" enumerated in § 5328]; *Devereaux*, *supra*, 32 Cal.App.4th at p. 1585 [the patient "failed to allege with any specificity the nature of [the] records so as to bring them within the purview of . . . section 5328"].)  They therefore have little relevance here.

## A.

 We now turn to the primary question that occupied the Court of Appeal: whether the Long-Term Care Act and the Lanterman Act can be harmonized, or whether one must prevail over the other.

 We have recently emphasized the importance of harmonizing potentially inconsistent statutes.  " 'A court must, where reasonably possible, harmonize statutes, reconcile seeming inconsistencies in them, and construe them to give force and effect to all of their provisions.  [Citations.]  This rule applies although one of the statutes involved deals generally with a subject and another relates specifically to particular aspects of the subject.'  [Citation.]  Thus, when ' "two codes are to be construed, they 'must be regarded as blending into each other and forming a single statute.'  [Citation.]  Accordingly, they 'must be read together and so construed as to give effect, when possible, to all the provisions thereof.'  [Citation.]" '  [Citation.]  Further, ' " '[a]ll presumptions are against a repeal by implication.  [Citations.]'  [Citation.]  Absent an express declaration of legislative intent, we will find an implied repeal 'only when there is no rational basis for

15

harmonizing the two potentially conflicting statutes [citation], and the statutes are "irreconcilable, clearly repugnant, and so inconsistent that the two cannot have concurrent operation." ' " ' " (*Pacific Palisades Bowl Mobile Estates, LLC v. City of Los Angeles* (2012) 55 Cal.4th 783, 805 (*Pacific Palisades*); see *Chavez v. City of Los Angeles* (2010) 47 Cal.4th 970, 986.)

But the requirement that courts harmonize potentially inconsistent statutes when possible is not a license to redraft the statutes to strike a compromise that the Legislature did not reach. (See *Garcia v. McCutchen* (1997) 16 Cal.4th 469, 479 ["the general policy underlying legislation 'cannot supplant the intent of the Legislature as expressed in a particular statute' "].) The cases in which we have harmonized potentially conflicting statutes involve choosing one plausible construction of a statute over another in order to avoid a conflict with a second statute. (See, e.g., *Pacific Palisades*, *supra*, 55 Cal.4th at p. 803 [characterizing the statute being construed as "unclear or ambiguous"]; *Brown v. Mortensen* (2011) 51 Cal.4th 1052, 1067–1068 [harmonizing two federal statutes where the first statute was "silent" on the question at issue].) This canon of construction, like all such canons, does not authorize courts to rewrite statutes.

The Court of Appeal misapplied the harmonization rule here. It did not interpret either the Lanterman Act or the Long-Term Care Act in a way that rendered the text of the two acts consistent. Instead, its harmonization analysis began by considering the "common purpose" of the two acts, i.e., "to promote and protect the health and safety of mental health patients." It then harmonized the statutes by considering, in its own independent judgment, whether disclosure of the various types of information listed as public records in the Long-Term Care Act would serve this common purpose. This approach was well intentioned but erroneous.

16

Instead of starting with the statutes' purposes, the Court of Appeal should have started with their respective texts. (See *Pineda v. Williams-Sonoma Stores, Inc.* (2011) 51 Cal.4th 524, 529 ["we look first to the words of a statute, 'because they generally provide the most reliable indicator of legislative intent' "].) Beginning with the text of the statutes, we conclude that the statutes are in conflict and thus one must be interpreted as providing an exception to the other.

The Long-Term Care Act states not only that DPH citations are public records, but that "AA" and "A" citations must be publicly posted at the facility in question. (Health & Saf. Code, §§ 1424, subd. (b), 1429, subds. (a) & (b), 1439.) Section 1424, subdivision (a) specifically states the factors DPH must consider when choosing the appropriate fine for a violation. Those factors include "[t]he patient's or resident's medical condition," "his or her history of mental disability or disorder," and "[t]he probability and severity of the risk that the violation presents to the patient's or resident's mental and physical condition." (*Id.*, § 1424, subd. (a).) These "facts considered by the department in determining the amount of the civil penalty shall be documented by the department on an attachment to the citation and available in the public record." (*Id.*, subd. (b).) And section 1429 adds detailed regulations as to the manner in which citations must be posted at the facility, mandating where the citations must be displayed, the size and color of the display, and the font size that must be used. (*Id.*, § 1429, subds. (a), (b).)

In two separate statutory provisions, the Long-Term Care Act also mandates the precise redactions that should occur before making a citation public. Section 1423 states that "[t]he name of any patient jeopardized by the alleged violation shall not be specified in the citation in order to protect the privacy of the patient." (Health & Saf. Code, § 1423, subd. (a)(2).) Although patient names must be made available to the sanctioned facility itself, they "shall not be subject to disclosure as a public record." (*Ibid.*) Similarly, section 1439 states that "[a]ny

17

writing . . . retained by the state department in connection with the provisions of this chapter is a public record . . . and, as such, is open to public inspection pursuant to the provisions of [the Public Records Act]. However, the names of any persons contained in such records, except the names of duly authorized officers, employees, or agents of the state department conducting an investigation or inspection . . . shall not be open to public inspection and copies of such records provided for public inspection shall have such names deleted."

Thus, the Long-Term Care Act's detailed provisions mandate the contents and public nature of DPH citations, as well as the information that must be redacted before the citations are made public. By specifying that names must be redacted from the public copies of citations but not mentioning any other information that may be redacted, sections 1423 and 1439 leave little room for concluding that any further redaction is permitted. (See *Rojas v. Superior Court* (2004) 33 Cal.4th 407, 424 [" '[I]f exemptions are specified in a statute, we may not imply additional exemptions unless there is a clear legislative intent to the contrary.' "].) Accordingly, we conclude that the express terms of the Long-Term Care Act require that citations be made public subject only to the restriction that the names used in the citation must be redacted, except for the names of DPH's investigating officers, employees, or agents.

By contrast, the Lanterman Act's express terms would render most of the information included in a DPH citation confidential and therefore not subject to disclosure. It renders confidential "[*a*]*ll* information and records obtained in the course of providing services" to patients and residents under the enumerated statutory divisions. (§ 5328, italics added.) As noted, the types of information a DPH investigator must compile will necessarily derive from such information. Furthermore, the Lanterman Act specifically enumerates 25 exceptions to its general ban on disclosure of confidential information, none of which is applicable

18

here. No exception permits publication of confidential patient or resident information so long as the patient's or resident's name is redacted.

It is thus evident that the two statutory schemes conflict. On one hand, the Long-Term Care Act, which expressly applies to facilities that provide the types of services enumerated in section 5328 (see Health & Saf. Code, § 1418), requires publication of all information contained in DPH-issued citations except for the names of patients or residents (or information that constitutes the constructive equivalent of the patients' or residents' names). Failure to publicly post the citations in the manner required by the Long-Term Care Act is a class "B" violation of the Long-Term Care Act resulting in a $1,000 civil penalty. (*Id.*, § 1429, subd. (c).) On the other hand, section 5328 provides that all information obtained in the course of providing enumerated services to patients or residents is confidential and thus not subject to disclosure. As such, the Lanterman Act would require extensive redaction of citations before they could be made public. The knowing disclosure of such confidential information exposes the discloser to a minimum of $10,000 in civil liability; negligent disclosure exposes the discloser to a minimum of $1,000 in civil liability. (§ 5330.) In sum, the Lanterman Act prohibits disclosure of information that the Long-Term Care Act deems public.

The Court of Appeal's harmonization effort results in a disclosure scheme that is inconsistent with the requirements of either statute. By permitting DPH to disclose "what was the harm [to the patient or resident], what was the abuse, what was the lack of respect or dignity afforded, and what was the action that the facility did or failed to do" (italics omitted), the Court of Appeal did not give full effect to section 5328's mandate that such information is the type of medical information that must be maintained as confidential to protect patients and residents from embarrassment. And by requiring redaction of information that the Long-Term Care Act expressly requires to be included in the public record,

19

including "[t]he patient's or resident's mental, physical, and medical conditions, history of mental disability or disorder, as well as the risk the violation presents to that mental and physical condition," the Court of Appeal did not give full effect to that act's purpose of preventing future violations by making facilities' past violations publicly known with a high degree of specificity. As Justice Hoch put it, "under the guise of bringing harmony, the majority opinion does violence to two statutory enactments — carving out of the Lanterman Act an exception allowing public citations to include an unredacted description of the nature of the violation, and severing from the Long-Term Care Act the requirement that the public record contain the aforementioned 'relevant facts.' "

Even if the Court of Appeal's methodology had been sound, it is not clear that the balance it struck was logical. The Court of Appeal's decision required the redaction of information, including information on "the risk the violation presents to [the patient's or resident's] mental and physical condition," that is highly significant to understanding how and why the DPH selected a particular penalty as the appropriate punishment for a particular violation. At the same time, the Court of Appeal's compromise leaves in the public record enough facts for a patient or resident who was the victim of the misconduct to know that he or she is the subject of the citation. It is hard to see how such results would protect patients from the embarrassment of seeing their suffering disclosed in the public record or advance the Long-Term Care Act's goal of specifically and publicly identifying the full scope of a facility's misconduct.

In addition, the Court of Appeal's harmonization requires facilities to walk a tightrope when balancing their obligations to protect confidentiality and to make citations public. The slightest misstep in either direction exposes facilities to significant civil liability. (See Health & Saf. Code, § 1429, subd. (c); § 5330, subds. (a) & (b).) It is unclear whether a risk-averse facility would react by over-

20

redacting or under-redacting. What is clear is that facilities would be exposed to a dilemma that the Legislature in all likelihood did not intend to create.

We also reject DPH's argument that the statutes can be harmonized by reading section 1439 as authorizing the extensive redaction of citations permitted by the Court of Appeal. Section 1439 requires disclosure of citations "pursuant to the provision of" the Public Records Act. In turn, the Public Records Act provides that "public records exempt from disclosure by express provisions of law" need not be disclosed. (Gov. Code, § 6253, subd. (b).) According to DPH, section 5328 is such an "express provision of law," thus creating an exemption from the Public Records Act's general rule favoring disclosure of governmental records. But interpreting section 5328 to define the information subject to disclosure under the Long-Term Care Act would mean section 1439 has little if any practical effect as to mentally ill and developmentally disabled individuals in state-owned long-term health care facilities, who constitute a significant portion of the individuals section 5328 encompasses. It is hard to fathom why the Legislature would have expressly stated in section 1439 that "the names of any persons contained in such records . . . shall not be open to public inspection," if it also meant to define the scope of required redactions through reference to section 5328, which renders *all* patient and resident records confidential unless otherwise provided. Reading the statutes in the manner DPH proposes would also shield long-term care facilities serving mentally ill and developmentally disabled residents from public scrutiny in a manner not applicable to other long-term care facilities. (Cf. *Kizer*, *supra*, 53 Cal.3d at p. 148 [declining to construe the Long-Term Care Act to create "a two-tiered system of enforcement"].) We therefore conclude it is not "reasonably possible" to harmonize these provisions "without distorting their apparent meaning." (*Fields v. Eu* (1976) 18 Cal.3d 322, 328.)

21

For similar reasons, we reject DPH's argument that the Information Practices Act of 1977 protects from disclosure the information contained in DPH citations.  The Information Practices Act does not apply to records that are disclosable "[p]ursuant to the California Public Records Act."  (Civ. Code, § 1798.24, subd. (g).)  DPH's argument under the Information Practices Act assumes that section 5328 either defines the scope of disclosure required under the Long-Term Care Act or announces an exception to the Public Records Act's general rule that public records are disclosable.  We have rejected the former proposition, and the latter is the dispositive question in this appeal.

**B.**

We now address the dispositive question:  whether the Lanterman Act must be treated as an exception to the Long-Term Care Act's general rule that DPH citations must be made public with only minimal redactions, or whether the Long-Term Care Act must be treated as an exception to the Lanterman Act's general rule that all information obtained in the course of treating mentally ill and developmentally disabled patients and residents is confidential.

The rules we must apply when faced with two irreconcilable statutes are well established.  "If conflicting statutes cannot be reconciled, later enactments supersede earlier ones [citation], and more specific provisions take precedence over more general ones [citation]."  (*Collection Bureau of San Jose v. Rumsey* (2000) 24 Cal.4th 301, 310 (*Rumsey*).)  But when these two rules are in conflict, the rule that specific provisions take precedence over more general ones trumps the rule that later-enacted statutes have precedence.  (See *People v. Gilbert* (1969) 1 Cal.3d 475, 479 [" 'It is the general rule that where the general statute standing alone would include the same matter as the special act, and thus conflict with it, the special act will be considered as an exception to the general statute whether it was passed before or after such general enactment.' "]; see *Nunes Turfgrass, Inc.*

22

*v. Vaughan-Jacklin Seed Co.* (1988) 200 Cal.App.3d 1518, 1539 [same]; see also Code Civ. Proc., § 1859 ["when a general and particular provision are inconsistent, the latter is paramount to the former"].)

The parties rely on dueling cases to demonstrate which statute is more specific. The Center cites cases to demonstrate that the relevant provisions of the Long-Term Care Act are more specific because they deal with a more specific subject matter — i.e., DPH citations — than does section 5328 of the Lanterman Act. (See, e.g., *Marsh v. Edward Theatres Circuit, Inc.* (1976) 64 Cal.App.3d 881, 890 ["A special statute dealing expressly with a particular subject controls and takes precedence over a more general statute covering the same subject."].) On the other hand, DPH argues that the Lanterman Act is more specific because it applies to a narrower group of individuals. (See *In re Ward* (1964) 227 Cal.App.2d 369, 374–375.)

"[O]ur goal is to discern the probable intent of the Legislature so as to effectuate the purpose of the laws in question." (*Rumsey*, *supra*, 24 Cal.4th at pp. 309–310; see Code Civ. Proc., § 1859.) Considering the precise nature of the two statutory schemes here, we conclude that the Long-Term Care Act is the more specific statute. The particularly detailed nature of the Long-Term Care Act's discussion of DPH citations demonstrates that the Legislature thought carefully and specifically about the importance of publishing citations and concluded that patients' and residents' confidentiality was adequately protected by redacting the names of the victims of a violation. The Lanterman Act, by contrast, addresses the confidentiality of records obtained in the course of treating mentally ill and developmentally disabled individuals at a high level of generality. Further, although the Long-Term Care Act applies to some facilities that are unlikely to provide services under the Lanterman Act, four of the eight categories of long-term health care facilities defined in the Long-Term Care Act exclusively serve

23

developmentally disabled persons. The Lanterman Act, by comparison, applies whether or not services are provided in a "long-term health care facility." On balance, the specificity with which the Long-Term Care Act discusses DPH citations and the fact that developmentally disabled and mentally ill individuals are among the primary groups the Legislature sought to protect via the Long-Term Care Act persuade us that the Legislature intended DPH citations to be made public subject only to any redaction required by the Long-Term Care Act, notwithstanding section 5328's broad language.

This conclusion is buttressed by the fact that the Long-Term Care Act is the later-enacted statute. The Long-Term Care Act was enacted just over a year after section 5328 was amended and reenacted. The Legislature that enacted the Long-Term Care Act was no doubt aware of the privacy concerns presented by public disclosure of information obtained in the course of treating mentally ill and developmentally disabled individuals. Yet the Long-Term Care Act, as originally enacted, included Health and Safety Code section 1439, which expressly mandates that every "writing" DPH generates under the Long-Term Care Act is a matter of public record subject only to the redaction of the names of the individuals involved (other than DPH investigators). Had the Legislature intended to treat citations issued to facilities caring for mentally ill and developmentally disabled patients and residents differently than citations issued to other facilities, it likely would have said so given how recently it had reconsidered section 5328.

The Legislature has amended section 5328 several times since 1972 to update statutory cross-references and to expand the list of exceptions. In 1982, the Legislature enacted section 4514, which is substantively identical to section 5328 but pertains exclusively to developmentally disabled individuals. These changes left intact the key language of section 5328: the requirement that "[a]ll information and records obtained in the course of providing services . . . to either

24

voluntary or involuntary recipients of services shall be confidential." (§ 5328; see Gov. Code, § 9605 ["Where a section or part of a statute is amended . . . . [t]he portions which are not altered are to be considered as having been the law from the time when they were enacted . . . ."].)

Moreover, the Legislature has continued to view the Long-Term Care Act as demanding specific and detailed disclosure of DPH citations. Section 1424's statement that "[r]elevant facts considered by [DPH] in determining the amount of the civil penalty [for a citation] shall be documented by [DPH] on an attachment to the citation and available in the public record" was added by the Legislature in 1998. (Health & Saf. Code, § 1424, subd. (b); as amended by Stats. 1998, ch. 650, § 3, p. 4249.) Thus, more than 25 years after the original enactment of the Long-Term Care Act, the Legislature reaffirmed the importance of publicly releasing the detailed information contained in the attachments to a DPH citation, and it did so without suggesting that section 5328 limited the scope of disclosure. (Cf. *Albertson v. Superior Court* (2001) 25 Cal.4th 796, 804–807 [relying on legislative history showing that the Legislature had enacted a statute requiring disclosure of confidential records of sex offenders to the district attorney despite the fact that no such exemption was added to section 5328].)

DPH acknowledges that the Long-Term Care Act was enacted after section 5328 but argues that the Legislature's 2012 enactment of three identical statutory provisions (§§ 4514, subd. (v), 4903, subd. (h), 5328.15, subd. (c)) shows that the Legislature understands the Long-Term Care Act to be subordinate to section 5328's confidentiality rule. These identical provisions provide that confidential records may be disclosed to a private nonprofit "protection and advocacy" agency established pursuant to Welfare and Institutions Code section 4901 for the purpose of protecting patients' and residents' interests. Specifically, a facility may disclose "[a]n *unredacted* citation report" to the protection and advocacy agency,

25

but the disclosed "information shall remain confidential and subject to the confidentiality requirements of subdivision (f)" of section 4903. (§§ 4514, subd. (v)(2), 4903, subd. (h)(2), 5328.15, subd. (c)(2), italics added.) DPH says these provisions would be "pointless if unredacted citation reports containing Lanterman-protected information were already available to the general public under the [Long-Term Care Act] and/or [the Public Records Act]."

Contrary to DPH's argument, the 2012 enactments do not provide protection and advocacy agencies with merely the same access to DPH citations that the general public has under the Long-Term Care Act. The statutes, by their terms, provide for disclosures of *unredacted* citations, i.e., citations that include the names that sections 1423 and 1439 of the Health and Safety Code require to be redacted. Thus, the recent enactments at most prove that the Legislature in 2012 sought to ensure *greater* access to citations for the protection and advocacy agency than the degree of access to which the general public is entitled. This is hardly surprising given that the protection and advocacy agency needs to know *who* was actually harmed by a facility's misconduct in order to fulfill the agency's statutory mandate of "protecting and advocating for the rights of people with disabilities," including by "[p]ursu[ing] administrative, legal, and other appropriate remedies or approaches." (§ 4902, subd. (a)(2).) The 2012 enactments also operate in a different procedural context: whereas a member of the general public must file a Public Records Act request for a copy of the citation with redactions to remove patient names, the protection and advocacy agency gains direct access to unredacted records within three days of making a request. (§ 4903, subd. (e)(1).)

The legislative history of the 2012 enactments further supports the Center's position. The enactments were directed at a specific problem: DPH's refusal to provide unredacted reports regarding Lanterman-protected residents to the state's protection and advocacy agency absent a case-specific showing of probable cause.

26

(Sen. Com. on Human Services, Analysis of Sen. Bill No. 1377 (2011–2012 Reg. Sess.) as amended Aug. 20, 2012, p. 4 (Senate Analysis).) DPH cited sections 5328 and 4514 as the basis for this policy. (Sen. Analysis, at pp. 3–4.) But legislators who supported the 2012 enactments considered DPH's probable cause requirement "unnecessary and unwarranted" in light of the protection and advocacy agency's existing right to access relevant reports and its statutory obligation to maintain confidentiality. (*Id.* at p. 4.) These supporters hoped that by clarifying the protection and advocacy agency's right of access, the new provisions would "eliminate [DPH's] relatively recent practice that has resulted in substantial delays of records." (*Id.* at p. 5.) Contrary to DPH's argument, this legislative history does not suggest that the Legislature accepted DPH's broad interpretation of sections 5328 and 4514. If anything, the 2012 enactments rejected that interpretation by reaffirming the protection and advocacy agency's preexisting right of access. (Cf. *W.R. Grace & Co. v. Cal. Employment Com.* (1944) 24 Cal.2d 720, 729 ["Although courts ordinarily infer an intent to change the law from a material change in the language of a statute [citations], the circumstances may indicate merely a legislative intent to clarify the law . . . ."].)

DPH's argument that section 5328.15, subdivision (a) evinces the Legislature's intent to limit the scope of public disclosure of DPH citations is similarly flawed. That provision permits the disclosure of any and all information that is confidential under section 5328 to DPH *licensing* personnel. It does not refer specifically to DPH citations imposed under the Long-Term Care Act, nor does it prove by implication that the Legislature sought to repeal that statute's explicit provisions governing the disclosure of such citations.

In sum, the Long-Term Care Act is both the more specific and the later-enacted statute. As such, it creates a limited exception to section 5328's general prohibition against the release of any information obtained in the course of

27

providing treatment to mentally ill and developmentally disabled individuals through the statutorily enumerated programs.  Thus, the Long-Term Care Act's provisions govern the scope of information contained in DPH citations that must be released to the public both at facilities themselves and in response to a request pursuant to the Public Records Act.

On this record, we do not know whether the 55 citations at issue will be devoid of personally identifying information once redacted to remove patient and resident names.  Accordingly, we have no occasion to consider whether unusually detailed citations that clearly identify particular patients or residents without expressly naming them might require redaction under the Long-Term Care Act.

**IV.**

For the reasons above, we reverse and remand this case to the Court of Appeal with instructions to deny DPH's petition for writ of mandate.  We also deny DPH's motion to take additional evidence.

**LIU, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**WERDEGAR, J.**
**CHIN, J.**
**CORRIGAN, J.**
**BAXTER, J.***
**GILBERT, J.****

_____
\* Retired Associate Justice of the Supreme Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

**\*\*** Presiding Justice of the Court of Appeal, Second Appellate District, Division Six, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** State Department of Public Health v. Superior Court
_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 219 Cal.App.4th 966
**Rehearing Granted**

_____

**Opinion No.** S214679
**Date Filed:** February 19, 2015
_____

**Court:** Superior
**County:** Sacramento
**Judge:** Timothy M. Frawley

_____

**Counsel:**

Kamala D. Harris, Attorney General, Kathleen Kenealy, Chief Assistant Attorney General, Gregory D. Brown, Deputy State Solicitor General, Julie Weng-Gutierrez, Assistant Attorney General, Niromi W. Pfeiffer and Grant Lien, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

Davis Wright Tremaine, Rochelle Wilcox; Jassy Vick Carolan, Duffy Carolan and Jeff Glasser for Real Party in Interest.

Arne Werchick for California Advocates for Nursing Reform, Inc., as Amicus Curiae on behalf of Real Party in Interest.

Ram, Olson, Cereghino & Kopczynski, Karl Olson; Jeffrey D. Glasser; James W. Ewert; and Juan F. Cornejo for California Newspaper Publishers Association, Los Angeles Times Communications LLC, McClatchy Newspapers, Inc., First Amendment Coalition and California Broadcasters Association as Amici Curiae on behalf of Real Party in Interest.

O'Melveny & Myers, Sabrina Heron Strong, Patricia K. Yew, Heather Silver and Alexander Slavin for Inner City Law Center as Amicus Curiae.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Grant Lien
Deputy Attorney General
1300 I Street, Suite 125
Sacramento, CA  94244-2550
(916) 327-6749

Duffy Carolan
Jassy Vick Carolan
400 Montgomery Street, Suite 200
San Francisco, CA  94104
(415) 539-3399