Filed 12/28/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| FIRST AMENDMENT COALITION et al.,<br><br>    Petitioners,<br><br>v.<br><br>SUPERIOR COURT FOR THE CITY AND COUNTY OF SAN FRANCISCO,<br><br>    Respondent;<br><br>ROB BONTA, Attorney General of the State of California; CALIFORNIA DEPARTMENT OF JUSTICE,<br><br>    Real Parties in Interest. | A165888<br><br>(San Francisco City & County Super. Ct. No. CPF-19-516545) |

In acknowledgment of the extraordinary authority vested in peace officers and custodial officers and the serious harms occasioned by misuses of that authority, the Legislature enacted section 832.7, subdivision (b), of the Penal Code[1] (hereafter section 832.7(b)) to promote transparency and public access to certain records in the possession of state and local agencies. Under section 832.7(b), records relating to officers who engage in specified types of harmful or unlawful conduct are deemed nonconfidential and must be made

---

[1]    Unless otherwise indicated, all further statutory references are to the Penal Code.

1

available for public inspection pursuant to the California Public Records Act, Government Code sections 7920.000 et seq. (CPRA).

Though section 832.7(b)(1) calls for public availability of these nonconfidential records "[n]otwithstanding subdivision (a) [of section 832.7], Section 7923.600 of the Government Code, or any other law," Government Code section 7927.705 states the CPRA "does not require disclosure of records, the disclosure of which is *exempted or prohibited pursuant to . . . state law*." (Italics added.) Applying settled rules of statutory construction, we conclude that, notwithstanding Government Code section 7927.705's incorporation of disclosure exemptions codified outside the CPRA, section 832.7(b) supersedes state law disclosure exemptions that, like the two statutory provisions specifically mentioned in section 832.7(b)(1), pose a direct conflict with its decree that records within its scope are not confidential and shall be made available to the public.

Accordingly, we shall issue a peremptory writ of mandate directing respondent court to vacate its judgment to the extent it denies petitioners' motion for judgment based on Government Code section 11183, which prohibits the disclosure of subpoenaed records. In all other respects, the petition for writ of mandate is denied.

**FACTUAL AND PROCEDURAL BACKGROUND**

Section 832.7(b) changed the law formerly protecting personnel records of peace officers and custodial officers as confidential and generally exempt from public disclosure. (Stats. 2018, ch. 988, §§ 1, 2; see *Becerra v. Superior Court* (2020) 44 Cal.App.5th 897, 914–915 (*Becerra*).) Under the new law, personnel records regarding specified types of peace officer and custodial officer conduct "shall not be confidential and shall be made available for public inspection pursuant to the [CPRA]." (§ 832.7(b)(1)(A)–(E).)

2

Soon after section 832.7(b) became effective in 2019, petitioners First Amendment Coalition and KQED Inc. filed requests under the CPRA to obtain records in the possession of the Attorney General and the Department of Justice (collectively, the Department) relating to: (1) the discharge of a firearm at a person by a peace or custodial officer; (2) any use of force by a peace or custodial officer resulting in death or great bodily injury; and (3) a sustained finding of dishonesty or sexual assault by an officer. Section 832.7(b) includes these types of records among those that are deemed not confidential and must be made available for public inspection pursuant to the CPRA. (See § 832.7(b)(1)(A)–(C).[2]) We will hereafter refer to these nonconfidential records as "officer-related records."

Our first decision in this matter, *Becerra, supra*, 44 Cal.App.5th 897, addressed the Department's initial objections to disclosure and held that, as a matter of statutory interpretation, section 832.7(b) "generally requires disclosure of all responsive records in the possession of the Department, regardless whether the records pertain to officers employed by the Department or by another public agency and regardless whether the Department or another public agency created the records." (*Becerra,* at p. 910.) *Becerra* also concluded the CPRA's so-called " 'catchall' " exemption—which allows a public agency to justify the withholding of a public record upon a showing that the public interest served by nondisclosure

---

[2] Petitioners' CPRA requests sought categories of records deemed nonconfidential under section 832.7(b) as first enacted. (See Stats. 2018, ch. 988, § 2 (Sen. Bill No. 1421).) As will be discussed *post*, Senate Bill No. 16 (hereafter Senate Bill 16) subsequently amended section 832.7(b) to include additional categories of records relating to sustained findings of other harmful or illegal conduct. (Stats. 2021, ch. 402, § 3.) These new categories are not at issue in this case.

"clearly outweighs" the public interest served by disclosure (Gov. Code, § 7922.000)—may apply to records within the scope of section 832.7(b). (*Becerra,* at p. 910.)[3]

Following remand, and after further litigation, petitioners voluntarily narrowed their requests to reduce the burden of production, and the Department produced some 3,000 documents. But relying on Government Code section 7927.705, the Department withheld certain officer-related records on the basis that their disclosure is either exempted or prohibited by statutes not specifically mentioned in the CPRA. In response, petitioners filed a motion for judgment compelling disclosure of the withheld documents.

As relevant here, the trial court interpreted *Becerra* as holding that section 832.7(b) preserves all disclosure exemptions codified in the CPRA, with the exception of Government Code section 7923.600, which section 832.7(b)(1) expressly overrides. Pursuant to that understanding, and as pertinent here, the court ruled the Department may withhold officer-related documents pursuant to Government Code section 11183, Penal Code section 6126.3, and Unemployment Insurance Code section 1094. The court issued an order denying petitioners' motion for judgment pertaining to the following three categories of officer-related records: (1) documents obtained by the

<hr />

[3]  Effective January 1, 2023, the provisions of the CPRA were re-enacted with changed section numbering. (Stats. 2021, ch. 614, § 1 (Assem. Bill No. 473).) This opinion uses the new numbering scheme, but we note the following changes to assist readers in identifying the newly numbered sections associated with the key sections cited in *Becerra, supra,* 44 Cal.App.5th 897. The CPRA's catchall exemption is currently codified in Government Code section 7922.000, replacing former Government Code section 6255, subdivision (a). Government Code section 7923.600 replaces former Government Code section 6254, subdivision (f), and Government Code section 7927.705 replaces former Government Code section 6254, subdivision (k).

4

Department under subpoena; (2) a single report prepared by the Office of the Inspector General; and (3) records relating to unemployment benefits.

Petitioners filed a petition in this court for a writ of mandate directing the trial court to order disclosure of these records. We issued an order to show cause why the relief requested by petitioners should not be granted.

**DISCUSSION**

Under section 832.7(b), officer-related records falling within its scope are deemed nonconfidential and open to public inspection. (§ 832.7(b)(1).) This disclosure requirement expressly applies to records in the possession of "a state or local agency" which relate to investigations and findings by agencies with oversight authority over peace or custodial officers. (E.g., § 832.7(b)(1)(A)–(E).) However, Government Code section 7927.705 states the CPRA "does not require disclosure of records, the disclosure of which is exempted or prohibited pursuant to federal or state law, including, but not limited to, provisions of the Evidence Code relating to privilege." Government Code section 7927.705 is " 'not an independent exemption' " to disclosure; rather, it " 'merely incorporates other prohibitions established by law.' " (*Copley Press, Inc. v. Superior Court* (2006) 39 Cal.4th 1272, 1283 (*Copley Press*).)

The question here is whether the nonconfidential officer-related records that are subject to disclosure under section 832.7(b) may be withheld by the Department pursuant to the state law confidentiality and disclosure prohibitions codified in Government Code section 11183, Penal Code sections 6126 and 6126.3, and Unemployment Insurance Code section 1094. These prohibitions are included in statutory schemes that allow the Department and other state oversight bodies to collect records and information for various

5

purposes that can include the investigation of matters falling outside the scope of section 832.7(b).

Whether section 832.7 overrides the application of these statutory exemptions in the context of officer-related records presents an issue of statutory interpretation, which we review de novo. (See *Becerra*, *supra*, 44 Cal.App.5th at p. 917.) The rules governing our analysis are settled. Our goal in interpreting a statute is to effectuate the Legislature's intent. (*Davis v. Fresno Unified School Dist.* (2023) 14 Cal.5th 671, 687 (*Davis*).) We look first to the statutory language, and if the language is clear and unambiguous, we adhere to its plain meaning unless a literal interpretation would result in absurd consequences. (*Ibid*.) But when the statutory language is susceptible to more than one reasonable interpretation, we may consider other aids, including the statute's purpose, legislative history, and public policy. (*Ibid*.) The portions of a statute must be viewed " ' " ' "in the context of the entire statute and the statutory scheme of which it is a part, giving significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose." ' " ' " (*Ibid*.)

Section 832.7(b)(1) states: "Notwithstanding subdivision (a), Section 7923.600 of the Government Code, or any other law, [the officer-related records described in section 832.7(b)] shall not be confidential and shall be made available for public inspection pursuant to [the CPRA]." Subdivision (a) of section 832.7 (hereafter section 832.7(a)) articulates the long-established rule that peace and custodial officer personnel records are "confidential and shall not be disclosed in any criminal or civil proceeding except pursuant to discovery [under certain provisions of the Evidence Code]." Section 832.7(a) prohibits disclosure of such records under the CPRA as well. (See *Copley Press*, *supra*, 39 Cal.4th at p. 1286.) Government Code

6

section 7923.600 is part of the CPRA and as relevant states the CPRA "does not require the disclosure of records of complaints to, or investigations conducted by" the Department of Justice and any state or local police agency, or any "investigatory . . . files compiled by any other state or local police agency" for "correctional" or "law enforcement" purposes. Thus, section 832.7(b)(1) makes clear these statutory exemptions for personnel records and investigatory files provide no basis for withholding officer-related records from public inspection.

But section 832.7(b)(1), by its terms, also contemplates public inspection of officer-related records "[n]otwithstanding . . . any other law." In petitioners' view, the plain import of this language is that records within the scope of section 832.7(b) may not be withheld based on other state laws prohibiting or exempting their disclosure. Conversely, the Department focuses on the latter portion of section 832.7(b)(1) specifying that officer-related records "shall be available for public inspection pursuant to [the CPRA]." Relying on *Becerra, supra*, 44 Cal.App.5th 897, the Department contends public accessibility to officer-related records remains subject to all codified disclosure exemptions that Government Code section 7927.705 incorporates into the CPRA. For the reasons below, we agree that *Becerra* is instructive but find it calls for a more nuanced analysis here.

## A. *Becerra v. Superior Court*

*Becerra* concluded as a matter of statutory interpretation that a different provision of the CPRA—namely the CPRA's catchall exemption now codified in Government Code section 7922.000—may apply to records falling within the scope of section 832.7(b). (*Becerra, supra*, 44 Cal.App.5th at p. 910.) Observing that section 832.7(b)(1) starts with an explicit contemplation that officer-related records are nonconfidential and disclosable

7

notwithstanding the investigatory files exemption in Government Code section 7923.600, and that it ends with an equally explicit mandate that such records be made available pursuant to the CPRA, *Becerra* concluded the Legislature thereby "signaled its intent that officer-related records are no longer confidential under the CPRA's investigatory files exemption but that the CPRA is otherwise essential to section 832.7's operation." (*Becerra*, at p. 925.) Critically, *Becerra* emphasized that the phrase " '[n]otwithstanding . . . any other law' " is a " ' " 'term of art' . . . that declares the legislative intent to override all *contrary* law." ' " (*Ibid.*, quoting *Arias v Superior Court* (2009) 46 Cal.4th 969, 983.)

*Becerra* then examined whether Government Code section 7922.000's catchall exemption poses a direct conflict with section 832.7(b)'s call for the disclosure of officer-related records. (*Becerra*, *supra*, 44 Cal.App.5th at pp. 925–927.) Among other things, *Becerra* observed the catchall exemption "is an integral part of the CPRA framework that, at the outset, allows a determination that the interest of the public is best served by the nondisclosure of otherwise responsive records." (*Becerra*, at p. 928.) As *Becerra* explained, the exemption "permits withholding based on various considerations, including public fiscal and administrative concerns regarding the ' "expense and inconvenience involved in segregating nonexempt from exempt information." ' " (*Ibid.*) To illustrate the point, *Becerra* referenced the Supreme Court's concern that it " 'would not be in the public interest' " if " 'any person requesting information, for any reason or for no particular reason, [could] impose upon a governmental agency a limitless obligation.' " (*Id.* at p. 927, quoting *American Civil Liberties Union Foundation v. Deukmejian* (1982) 32 Cal.3d 440, 453.)

8

Because the CPRA's catchall exemption allows withholding based on a variety of competing public interests, including public fiscal and administrative concerns, when doing so best serves the public interest, *Becerra* determined the exemption is "reasonably harmonized" with the withholding and redaction provisions of section 832.7(b), which more narrowly concern active investigations or focus on personal information and other specific situations triggered by such information. (*Becerra*, *supra*, 44 Cal.App.5th at p. 929.) As we reasoned, "[i]t would seem anomalous to construe section 832.7 as requiring that records be made available pursuant to the CPRA" while at the same time "disregarding the CPRA's contemplation that records should be withheld when the public interest in doing so clearly outweighs the public interest in disclosure." (*Becerra*, at p. 927, fn. 5.)

Finally, even though the catchall exemption has long applied to all types of public record requests upon a proper showing, *Becerra* found it noteworthy that the exemption has not been criticized "as an unworkable or overly broad exemption that unduly impairs government transparency or meaningful public access to information." (*Becerra*, *supra*, 44 Cal.App.5th at p. 927.)

In this case, the Department's briefing at times correctly describes *Becerra* as holding that CPRA disclosure exemptions that "do not conflict" with or are not "directly contrary" to section 832.7(b), such as the catchall exemption, can be invoked to withhold officer-related records. But the Department seems to suggest *Becerra* construed section 832.7(b) as preserving all nondisclosure provisions within the CPRA *but for* Government Code section 7923.600's investigatory files exemption. (See *Becerra*, *supra*, 44 Cal.App.5th at pp. 924–925.) *Becerra* did no such thing. Viewed in context, *Becerra*'s analysis was clearly confined to the CPRA's catchall

9

exemption, and it offered no opinion regarding any other CPRA or non-CPRA disclosure exemption.

Taking our cue from *Becerra*'s analysis that section 832.7(b)'s "notwithstanding" clause declares the Legislature's intent to override all contrary law, we now assess petitioners' claims that application of the state law confidentiality and disclosure prohibitions codified in Government Code section 11183, Penal Code sections 6126 and 6126.3, and Unemployment Insurance Code section 1094 would pose a direct conflict with section 832.7(b) with regard to the officer-related records at issue.

## B. Government Code Section 11183

The Attorney General is the "chief law officer of the State" and exercises "direct supervision over every district attorney and sheriff . . . in all matters pertaining to the duties of their respective offices." (Cal. Const., art. V, § 13.) The Attorney General enjoys broad oversight powers and may bring a civil action to ensure that local law enforcement agencies and their officers do not "engage in a pattern or practice of conduct . . . that deprives any person of rights, privileges, or immunities" protected by state or federal law. (Civ. Code, § 52.3, subds. (a), (b).) A so-called "pattern-or-practice investigation" seeks to identify systemic violations of individuals' civil rights and to provide remedial solutions through injunctive relief.

In opposing petitioners' motion for judgment, the Department submitted the declaration of Michael Newman, the Senior Assistant Attorney General of the Department's Civil Rights Enforcement Section, which included the following representations. In December 2016, the Department began a civil pattern-or-practice investigation into the Bakersfield Police Department (hereafter BPD) in response to complaints and media reports alleging excessive force and other serious misconduct. The Department

10

issued an investigatory subpoena for BPD's books and records, and BPD complied by producing relevant records. "At the conclusion of the investigation, the Department determined that BPD engaged in a pattern or practice of conduct that deprives persons of their constitutional rights, including using unreasonable force, unreasonably deploying canines, and engaging in unreasonable stops, searches, arrests, and seizures."

Consistent with Newman's declaration, the Department indicated earlier in this action that it " 'often' " uses its subpoena power to obtain necessary records from law enforcement agencies when reviewing an agency's decision not to file charges against an officer or independently investigating an agency. (*Becerra*, *supra*, 44 Cal.App.5th at pp. 911–912, fn. 2.) Alternatively, the Department " 'sometimes' " procures records pursuant to agreements made under the condition that " 'the materials will remain confidential as contemplated by Government Code section 11181.' " (*Ibid*.) The trial court agreed with the Department that the BPD records are categorically exempt from disclosure because they were obtained by subpoena.

Government Code section 11183 implements Government Code sections 11180 and 11181, which together authorize state executive departments, including the Department, to conduct investigations and audits of all subjects under their jurisdiction. In obtaining BPD's officer-related records, the Department claims it acted pursuant to Government Code section 11181, subdivision (e), which allows the issuance of subpoenas for the production of documents and testimony "pertinent or material to any inquiry, investigation, hearing, proceeding, or action conducted in any part of the state." Then, in response to petitioners' CPRA request, the Department withheld such records on the authority of Government Code section 11183,

11

which provides: "[A]n officer shall not divulge any information or evidence acquired by the officer from the . . . subpoenaed private books, documents, papers, or other items described in subdivision (e) of Section 11181 or any person while acting or claiming to act under any authorization pursuant to this article, in respect to the confidential or private transactions, property or business of any person. An officer who divulges information or evidence in violation of this section is guilty of a misdemeanor and disqualified from acting in any official capacity in the department."[4] For the reasons below, we conclude application of Government Code section 11183, in the context of officer-related records, would pose a direct conflict with section 832.7(b).

Section 832.7(b) explicitly states that officer-related records shall be nonconfidential and disclosable under the CPRA, contrary to the direction of section 832.7(a), which would otherwise exempt officer personnel records from public disclosure, and Government Code section 7923.600, which would otherwise shield officer-related records compiled as part of an investigation for correctional and law enforcement purposes. From this the most logical

_____

[4] Petitioners argue that none of the BPD records concerns "confidential or private transactions, property or business of any person" as contemplated by Government Code section 11183. We observe, however, that this statutory language was in place before the enactment of section 832.7(b) superseded the provisions for privacy and confidentiality of officer personnel files in section 832.7(a) and in the CPRA's exemption for investigatory files. (See Stats. 2003, ch. 876, § 6 (Sen. Bill No. 434).) For purposes of this opinion only, we will assume the subpoenaed BPD records qualify as "private" records and information within the meaning of Government Code sections 11181 and 11183. (See 87 Ops.Cal.Atty.Gen 181, 186 (2004) 2004 WL 2971140 at p. 3 [" 'Private' is broadly understood to refer to things *concerning* or belonging to *an individual* rather than the government or the public [citation] and 'confidential' generally refers to *matters* private, personal, or secret in nature *that are not broadly disclosed or widely known* [citation]."]) (Italics added.)

inference is that the "[n]otwithstanding . . . any other law" clause ensures, at the very least, that any other law having a similar dramatic impact on the public accessibility of officer-related records may not be given effect.

We are unpersuaded by the Department's suggestion that the superseding effect of the notwithstanding clause is properly limited to section 832.7(a) and Government Code section 7923.600. As the California Supreme Court explains, "[w]e deny a phrase like 'any other provision of law' its proper impact if we expect a . . . statute . . . to further enumerate every provision . . . to which it is relevant." (*People v. Romanowski* (2017) 2 Cal.5th 903, 908–909 [construing Pen. Code, § 490.2, subd. (a)]; see *Cross v. Superior Court* (2017) 11 Cal.App.5th 305, 320–321.)

Here, it is readily apparent that the subpoena power conferred by Government Code section 11181 is what makes it possible for the Department to effectively exercise its authority to review alleged incidents of excessive force and serious misconduct falling within the scope of section 832.7(b). Indeed, the Department acknowledges the subpoena power is critical to its investigations of such incidents. Thus, like the investigatory files exemption in Government Code section 7923.600, Government Code section 11183's disclosure prohibition, if applied to officer-related records, is likely to shield most, if not all, such records obtained by the Department and thereby render section 832.7(b)'s application a nullity in that regard. (See *State Farm Mutual Automobile Ins. Co. v. Garamendi* (2004) 32 Cal.4th 1029, 1042–1044 (*Garamendi*) [where statute mandated that " '[a]ll information provided" to the Insurance Commissioner "shall be available for public inspection," court would not give effect to the trade secrets privilege codified in Evidence Code section 1060, which would "nullify" the broad statutory mandate].) We therefore conclude that, in the context of the Department's

13

independent review or investigation of conduct falling under section 832.7(b), categorical application of Government Code section 11183's disclosure prohibition stands in direct conflict with section 832.7(b)'s express contemplation that officer-related records "shall not be confidential and shall be made available for public inspection pursuant to the [CPRA]."

Our conclusion that the two statutes are in conflict finds analogous support in *State Dept. of Public Health v. Superior Court* (2015) 60 Cal.4th 940 (*SDPH*). There, a news organization filed a CPRA request for copies of all patient care violation citations that the Department of Public Health (DPH) issued to seven state-owned long-term health care facilities pursuant to the Long-Term Care Act. (*SDPH*, at pp. 946–947.) DPH, relying on the Lanterman-Petris-Short Act and the Lanterman Developmental Disabilities Services Act (collectively, the Lanterman Act), responded by producing heavily redacted citations containing "scant information about the violations giving rise to each citation." (*SDPH*, at p. 947.) The news organization filed a petition for a writ of mandate seeking an order that DPH disclose the redacted material. (*Id.* at p. 948.)

As relevant here, the Supreme Court found it "evident" that the Long-Term Care Act and the Lanterman Act conflict. (*SDPH*, *supra*, 60 Cal.4th at p. 958.) As the court observed, the Long-Term Care Act requires that a patient care violation citation include past and current medical and mental health information of a mistreated patient, and a description of the risk the violation presents to the patient's mental and physical condition (*SDPH*, at p. 951); the act emphasizes that patient names must be redacted "but does not mention any other redaction" (*id.* at p. 952). Under the Long-Term Care Act, a patient care violation citation is " 'a public record' " and " 'open to public inspection pursuant to [provisions of the CPRA]' " (*SDPH*, at p. 952),

14

and citations must also be posted as statutorily specified upon pain of a $1,000 civil penalty (*id*. at p. 958). Meanwhile, the Lanterman Act generally regards as confidential any information obtained in the course of providing enumerated services to individuals with mental and developmental conditions and authorizes minimum civil liability of $10,000 for a knowing disclosure violation and minimum liability of $1,000 for a negligent disclosure. (*SDPH*, at p. 958.) Thus, the express terms of the Lanterman Act "would render most of the information included in a DPH citation confidential and therefore not subject to disclosure." (*SDPH*, at pp. 957–958.)

The Long-Term Care Act did not include language expressly stating its disclosure requirements apply notwithstanding any other law. Nonetheless, the Supreme Court concluded "the specificity with which the Long-Term Care Act discusses DPH citations and the fact that [individuals with developmental and mental health conditions] are among the primary groups the Legislature sought to protect via the Long-Term Care Act" evinces the Legislature's intent that, regardless of the Lanterman Act's broad confidentiality language, DPH citations "be made public subject only to any redaction required by the Long-Term Care Act." (*SDPH*, *supra*, 60 Cal.4th at p. 961.) In sum, the Supreme Court held "the Long-Term Care Act's provisions govern the scope of information contained in DPH citations that must be released to the public" in response to a CPRA request. (*Id*. at p. 964.)

Similar to the situation in *SDPH*, the specificity with which section 832.7(b) addresses the parameters for disclosure and redaction of responsive officer-related records culled from personnel records and investigatory files, evinces the Legislature's intent that, regardless of Government Code section 11183, the BPD records obtained as part of the Department's investigation of

15

conduct falling under section 832.7(b) are nonconfidential and subject to public inspection.  To hold otherwise would disregard the straightforward import of section 832.7(b)(1)'s notwithstanding clause directing that such records be made publicly available despite state law exemptions that would directly prevent or obstruct their disclosure.  (See *Klajic v. Castaic Lake Water Agency* (2004) 121 Cal.App.4th 5, 13.)

According to the Department, the circumstance that section 832.7(b)(1) cites Government Code section 7923.600 but no other CPRA exemption gives rise to the inference that section 832.7(b) leaves intact the stipulation in Government Code section 7927.705 that the CPRA does not require disclosure of records where disclosure is prohibited or exempted pursuant to state law.  Though this statement appears correct as far as it goes, we reject the Department's further suggestion that section 832.7(b) thereby intends to give effect to all exemptions generally incorporated into the CPRA by Government Code section 7927.705.

The language of section 832.7(b)(1) declares that officer-related records "shall not be confidential and shall be made available for public inspection *pursuant to the* [*CPRA*]."  (Italics added.)  As we indicated in *Becerra*, the inclusion of the italicized language signals the Legislature's intent that the CPRA remains essential to section 832.7(b)'s operation.  (*Becerra, supra,* 44 Cal.App.4th at p. 925.)  This point is reinforced by *Becerra*'s recognition that the notwithstanding clause "cannot reasonably be read to do away with the entire CPRA"; rather, " 'only those provisions of the law that conflict with' section 832.7(b)—'not . . . every provision of law'—are inapplicable."  (*Ibid*.)

Consequently, like the catchall exemption addressed in *Becerra*, other statutory disclosure exemptions that do not pose a direct conflict with section 832.7(b)—whether mentioned by name within the CPRA or incorporated into

16

the CPRA by Government Code section 7927.705—may continue to operate. Again, whether a statutory exemption directly conflicts with section 832.7(b) does not turn on the mere circumstance that application of the exemption would result in the withholding of responsive records. Here, we may reasonably infer from the entire text of section 832.7(b)(1) that its call for disclosure is intended to supersede, at minimum, those exemptions like section 832.7(a) and Government Code section 7923.600 that would "nullify" its application to a wide or significant swath of officer-related records. (*Garamendi*, *supra*, 32 Cal.4th at p. 1044.) As explained, the disclosure prohibition in Government Code section 11183 falls squarely into this category.

Though we do not view the statutory language as ambiguous, we may look to the legislative history to confirm our construction on this point. (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1046.) As *Becerra* observed, one legislative analysis described the proposed enactment of section 832.7(b) as " 'open[ing] police officer personnel records in very limited cases, allowing local law enforcement agencies *and law enforcement oversight agencies* to provide greater transparency around only the most serious police complaints.' " (*Becerra*, *supra*, 44 Cal.App.4th at p. 920.) "Underscoring this desire for greater access and transparency, including access to records maintained by law enforcement oversight agencies, the Legislative Counsel's Digest . . . explained: 'This bill would require, notwithstanding any other law, . . . *records relating to specified incidents, complaints, and investigations involving peace officers and custodial officers* to be made available for public inspection pursuant to the California Public Records Act.' " (*Becerra*, at p. 921.) There appears no dispute that the Department is a law enforcement oversight agency or that it uses its subpoena power to obtain necessary

17

officer-related records to conduct its independent review and investigations into complaints against officers and agencies. (See *id.* at pp. 911–912, fn. 2.)

Our construction also aligns with the legislative findings accompanying section 832.7(b)'s enactment, which emphasize the critical importance of its disclosure mandate: " 'The public has a right to know all about serious police misconduct, as well as about officer-involved shootings and other serious uses of force. Concealing crucial public safety matters such as officer violations of civilians' rights, or inquiries into deadly use of force incidents, undercuts the public's faith in the legitimacy of law enforcement, makes it harder for tens of thousands of hardworking peace officers to do their jobs, and endangers public safety.' (Stats. 2018, ch. 988, § 1(b).)" (*Becerra*, *supra*, 44 Cal.App.5th at p. 921.) These public policy concerns are more fully addressed by a construction that, consistent with the statutory language, gives primacy to disclosure when an oversight agency such as the Department obtains and relies on officer-related records to independently review or investigate allegations of harmful or unlawful officer conduct.

Additionally, under our construction, the same officer-related records must be made available for public inspection whether they are in the possession of the Department or in the hands of a local agency. This is consistent with case law concluding it "unlikely the Legislature intend[s] to render documents confidential based on their location, rather than their content." (*Commission on Peace Officer Standards & Training v. Superior Court* (2007) 42 Cal.4th 278, 291; see *Becerra*, *supra*, 44 Cal.App.5th at p. 923; *San Diego County Employees Retirement Assn. v. Superior Court* (2011) 196 Cal.App.4th 1228, 1240 [finding "no logic" in exempting a roll of public employee information from disclosure "depending on what entity maintains it"].)

On this score, we note the trial court took no exception to the principle that a document's status as public or confidential does not turn on its location. But the court emphasized that Government Code section 11183 protects documents "as a function of the way they were obtained," not their location. The Department agrees, contending the confidentiality restrictions accompanying the grant of subpoena power serve to facilitate and protect the integrity of the Department's investigations, in part because witness cooperation might be more easily secured if witnesses know of these confidentiality rules. (See *Tom v. Schoolhouse Coins, Inc.* (1987) 191 Cal.App.3d 827, 830.)

But section 832.7(b) features numerous provisions requiring redaction of disclosed records for various protective purposes, including the integrity of pending investigations.[5] Though claiming such redactions do not apply until after a determination that a responsive record is not otherwise exempt (e.g., pursuant to the CPRA's catchall exemption), the Department offers no meaningful explanation why its ability to investigate and provide effective

_____

[5] These include redactions to remove personal data and to preserve the anonymity of complainants and witnesses, and redactions where there is a specific reason to believe that disclosure would pose a significant danger to the physical safety of the officer or another person. (§ 832.7(b)(6)(A), (B), (D).) Redaction is also required to "protect confidential medical, financial, or other information of which disclosure is specifically prohibited by federal law or would cause an unwarranted invasion of personal privacy that clearly outweighs the strong public interest in records about possible misconduct and use of force." (§ 832.7(b)(6)(C).) Redaction is also permitted when, in a particular case, "the public interest served by not disclosing the information clearly outweighs the public interest served by disclosure of the information." (§ 832.7(b)(7).) Additionally, release may be delayed of records involving misconduct or use of force for proscribed periods where a criminal investigation or proceeding is active and other criteria are satisfied. (§ 832.7(b)(8).)

19

oversight would be hampered in spite of these redaction provisions. Indeed, the legislative history indicates law enforcement agencies made similar arguments in opposing the enactment of section 832.7(b) (e.g., Assem. Com. on Public Safety, Rep. on Sen. Bill No. 1421 (2017–2018 Reg. Sess.) as amended June 19, 2018, p. 9), and the inclusion of the statutorily enumerated redactions reflects the Legislature's considered response to these arguments.

The Department also appears to contend that Senate Bill 16, which amended section 832.7 in 2021, somehow confirms the authority of local and state agencies to withhold officer-related records based on any and all federal and state law disclosure exemptions. We cannot agree.

Senate Bill 16 amended section 832.7(b) to increase transparency. The legislation enlarged the scope of the required disclosure to include records relating to additional types of sustained findings and records of officers who resign before an investigation concludes. (Stats. 2021, ch. 402, § 3; e.g., § 832.7(b)(1)(A)(iii), (iv) (unreasonable or excessive force),§ 832.7(b)(1)(D) (prejudice or discrimination against protected classes); § 832.7(b)(1)(E) (unlawful arrest or search); § 832.7(b)(3) (resigning officers).) Senate Bill 16 also clarified that, for purposes of section 832.7(b), the lawyer-client privilege does not prohibit the disclosure of factual information provided by the public entity to its attorney or factual information discovered in an investigation, even when the investigation is conducted by the attorney. (§ 832.7(b)(12)(A)(i).) As part of that clarification, Senate Bill 16 included language stating the newly added lawyer-client privilege provision "does not prohibit the public entity from asserting that a record or information within the record is exempted or prohibited from disclosure *pursuant to any other federal or state law*." (§ 832.7(b)(12)(B), italics added.)

Seizing upon the language italicized above, the Department appears to suggest section 832.7(b)(12)(B) broadly allows it to withhold officer-related records under any other law, such as Government Code section 11183 and the other statutory exemptions invoked here. We conclude otherwise. By its terms, the provision explicitly limits its application to "[t]his paragraph"—i.e., paragraph (b)(12)—which pertains solely to disclosure obligations when the lawyer-client privilege is invoked.

The Department also reiterates that the confidentiality protections afforded by Government Code section 11183 serve to encourage cooperation by witnesses and targets of investigations and thereby enable the Department and other agencies to engage in more effective oversight. Contending these are important public policy interests that are not directly contrary to the interests promoted by section 832.7(b), the Department argues they should be preserved. We have, however, already concluded that Government Code section 11183 poses a direct conflict to the extent it would allow the Department to shield a broad swath of officer-related records that are subject to public inspection pursuant section 832.7(b), and that therefore effect must be given to section 832.7(b)(1)'s notwithstanding clause. If the Department believes the confidentiality protections in Government Code section 11183 deserve precedence over section 832.7(b)'s express contemplation that records within its scope are not confidential and shall be disclosed, it may take its cause to the Legislature.

In its traverse to the order to show cause, the Department presently acknowledges it must produce officer-related records obtained when it exercises its oversight authority to review a specific incident of officer misconduct covered by section 832.7(b). But noting BPD was subject to an independent pattern-or-practice investigation, the Department now contends

for the first time in this matter that section 832.7(b) is inapplicable to records obtained during a pattern-or-practice investigation, because such investigations are aimed at systemic violations and do not target individual incidents for review. Though section 832.7(b) neither includes nor excludes explicit reference to pattern-or-practice investigations, the Department draws its conclusion from the statutory language stating that records "shall be made available for public inspection" where they "relate to the report, investigation, or findings" of a specific "incident" of harmful or wrongful conduct listed in section 832.7(b). (E.g., §832.7(b)(1)(A)(i), (b)(1)(A)(ii), (b)(1)(B)(i), (b)(1)(C), (b)(1)(D), (b)(1)(E).) In other words, the Department seems to read these statutory provisions as excluding records from the scope of section 832.7(b) when they are obtained during a review or investigation of multiple incidents of misconduct. We are not convinced.

As petitioners point out, the Penal Code makes clear that terms referencing "the singular number includes the plural," and vice versa. And that is the most sensible way to read and understand section 832.7(b), whose aim is to provide meaningful transparency. By contrast, the Department's textual construction would categorically shield officer-related records whenever a local or oversight agency conducts a single investigation involving separate incidents of misconduct committed by one officer, or a single investigation of misconduct committed by multiple officers, no matter how related the incidents.

In closing, we note petitioners acknowledge that section 832.7(b) does not categorically require disclosure of all of the Department's pattern-or-practice files. Petitioners indicate that documents created by the Department as part of a pattern-or-practice investigation may fall outside the statute if, for example, they are "too attenuated" from any particular

22

incident. We have no occasion to address such points. There is no indication the Department created any of the disputed BPD records as part of its investigation, and in any event, the precise nature of the particular records remains unclear. Petitioners also concede that, on remand, the Department is free to make a showing that individual BPD records are appropriately "withheld or redacted, either because they do not fall within the scope of [section 832.7(b)] or because they, or parts of them are exempt from disclosure for reasons other than [Government Code section 11183]."

### C. Penal Code Sections 6126 and 6126.3

The trial court conducted an *in camera* review and described the next withheld record as a 160-page report of the Office of the Inspector General (hereafter OIG) that includes an incident summary, information and communications from the person or persons seeking the Inspector General's review, a summary of facts, progress of the investigation, materials from the OIG's intake review committee, a timeline of events, and other communications among the OIG staff. This report apparently relates to an incident in which prison guards inflicted great bodily injury upon a prisoner, and the report appears to include internal records of the OIG. The trial court concluded the Department properly withheld this report pursuant to section 6126.3, subdivision (c)(2), (3), and (4). Petitioners contend that this ruling was in error and that section 832.7(b) has superseded the confidentiality provisions in sections 6126, subdivision (c) (hereafter section 6126(c)) and 6126.3, subdivision (c) (hereafter section 6126.3(c)).

By way of background, the OIG was created as an independent entity and is not "a subdivision of any other governmental entity." (§ 6125.) Section 6126 charges the Inspector General with responsibility "for contemporaneous oversight of internal affairs investigations, and the disciplinary process of the

Department of Corrections and Rehabilitation" (§ 6126, subd. (a)) and authorizes the OIG to conduct a review when "requested by the Governor, the Senate Committee on Rules, or the Speaker of the Assembly," or "on the Inspector General's own accord" (§ 6126, subd. (b)). Upon completion of a review, the OIG is required under section 6126(c)(1) to "prepare a complete written report, which may be held as confidential and disclosed in confidence, along with all underlying materials the Inspector General deems appropriate, to the Department of Corrections and Rehabilitation and to the requesting entity in subdivision (b), where applicable." The OIG must also prepare a public report but may redact certain information for the safety and security of OIG staff, inmates, and others, or where the information "might hinder prosecution related to the review." (§ 6126(c)(2).)

For purposes of this case, we assume the Department may properly invoke statutory provisions that appear reserved to the OIG. But the analysis here necessarily differs from the analysis in part B, *ante*. That is because section 6126.3 features a provision expressly stating that, "[e]*xcept as provided in subdivision* (c)," OIG papers and records "are public records subject to [the CPRA]." (§ 6126.3, subd. (b), italics added.) In turn, section 6126.3(c)(1)–(5) identifies OIG papers and records that "are *not* public records subject to [the CPRA]." (§ 6126.3(c), italics added.) Here, the trial court determined, after an *in camera* review, that the OIG report at issue was properly withheld because it appeared "to fall within the confines of" section 6126.3(c)(2) [reports and documents pertaining to uncompleted reviews], (c)(3) [communications pertaining to internal OIG discussions], and (c)(4) [identifying information and personal papers from requesting persons].

As indicated in part B, *ante*, the salient issue is whether, in the context of an OIG investigation of custodial officers, the terms of section 6126.3(c)(2)–

24

(4) pose a direct conflict with section 832.7(b)'s decree that the officer-related records within its scope shall be nonconfidential and made available for public inspection.  Section 832.7(b), however, speaks to the universe of public records pertaining to peace and custodial officers and officer investigations that must be made available for public inspection pursuant to the CPRA.  The OIG papers and documents listed in section 6126.3(c)(2)–(4) exist outside that universe because the Legislature has proclaimed they "are not public records subject to the [CPRA]."  (§ 6126.3(c).)  Put another way, these particular papers and documents are not records that, in the words of section 832.7(b)(1), could "be made available for public inspection *pursuant to the* [*CPRA*]."  (Italics added.)  We are not aware of any authority mandating disclosure of a record the Legislature has expressly classified as not a public record subject to the CPRA.  Because the OIG report at issue falls outside the reach of the CPRA, even though it appears to concern a custodial officer investigation of the type contemplated in section 832.7(b), the trial court did not err in declining to order its disclosure under section 832.7(b).

At oral argument, petitioners identified *Sierra Club v. Superior Court* (2013) 57 Cal.4th 157 (*Sierra Club*) as authority for the proposition that disclosure of a public agency record may be mandated notwithstanding a statute that expressly excludes it from the CPRA definition of a public record.  Petitioners' read of the case, however, is off the mark.

In *Sierra Club*, a CPRA statute specifically excluded " '[c]omputer software' from the definition of a public record" and defined " 'computer software' " as including "computer mapping systems."  (*Sierra Club, supra*, 57 Cal.4th at p. 165 [addressing former Gov. Code, § 6254.9].)  The question was "whether the term " 'computer software,' " as used in the statute, encompassed a so-called "GIS-formatted OC Landbase."  (*Ibid*.)  If it did,

25

*Sierra Club* explained, "then the GIS-formatted OC Landbase is not a public record subject to disclosure; if not, then it is a public record subject to disclosure unless otherwise exempt under the [CPRA]." (*Ibid.*)[6] *Sierra Club* ultimately concluded that "the better view, based on statutory text and context, is that GIS-formatted databases are not covered by the statutory exclusion of computer software, including computer mapping systems, from the definition of a public record." (*Id.* at p. 171.) Though *Sierra Club* held the database at issue was potentially disclosable pursuant to the CPRA because it did not fall within the computer software exclusion, the clear implication of the decision is that statutes excluding documents from the definition of a public record are to be enforced.

Petitioners also argue that article I, section 3, subdivision (b) of the California Constitution requires disclosure of the OIG report. We cannot agree. Though the constitutional provision generally favors disclosure of writings by public officials and agencies, petitioners overlook the provision's express statement that it "does not repeal or nullify, expressly or by implication, any . . . statutory exception to the right of access to public records . . . that is in effect on the effective date of this subdivision, including, but not limited to, any statute protecting the confidentiality of law enforcement and prosecution records." (Cal. Const., art. I, § 3, subd. (b)(5).) There is no question that section 6126.3(c) was in effect before the

---

[6] In *Sierra Club*, the question of whether the GIS-formatted OC Landbase was a public record was relevant in order to determine the cost of access to the database. If the database was a public record, then the petitioner could obtain it for a fee covering only the direct cost of duplication. (*Sierra Club*, *supra*, 57 Cal.4th at p. 163.) But if the database was not a public record under the statutory exclusion, then the public agency had the option to license the database according to the terms of a licensing policy. (*Ibid.*)

constitutional provision became effective.  (Compare Stats. 2013, Res. Ch. 123 (S.C.A. 3), § 1 (Prop. 42, approved June 3, 2014, eff. June 4, 2014 with Stats. 2004, ch. 734, § 1 (Sen. Bill No. 1352).)  In sum, the plain terms of this constitutional provision do not override the public records exception embodied in section 6126.3(c)(2)–(4).

Petitioners contend the conflict they perceive between section 6126.3(c) and section 832.7(b) is functionally identical to the direct conflict posed by Government Code section 11183.  But section 6126.3(c) is fundamentally different from Government Code section 11183 because it reflects the express will of the Legislature that certain specified documents are not public records subject to the CPRA.  Not only have petitioners failed to provide any authority requiring disclosure of a record that the Legislature has expressly excluded from the definition of a public record, but the one case it does identify strongly suggests a statute that excludes a document from the definition of a public record should be judicially respected and enforced.  (See *Sierra Club*, *supra*, 57 Cal.4th at p. 165.)

Though public accessibility to the OIG documents listed in section 6126.3(c)(2)–(4) might further the purposes underlying section 832.7(b), we may not override the explicit intent of the Legislature and the more limited disclosure scheme it crafted specifically for OIG documents.  Petitioners, of course, remain free to seek legislative reversal of the public record exception reflected in section 6126.3(c)(2)–(4).

In sum, the OIG report at issue was properly withheld to the extent it fell "within the confines of" section 6126.3(c)(2)–(4), as stated by the trial court.  Our conclusion, however, is not intended to preclude the trial court, on remand, from revisiting whether portions of the OIG report fall outside the scope of section 6126.3(c)(2)–(4).

## D. Unemployment Insurance Code Section 1094

Finally, the record in this matter contains the Department's "Withholding Log," which lists a number of documents being withheld on the grounds they reflect confidential unemployment information or confidential attorney-client communications and/or work product concerning confidential unemployment information.

In refusing public access to these documents, the Department relied on Unemployment Insurance Code section 1094, subdivision (a), which provides: "Except as otherwise specifically provided in this code, the information obtained in the administration of this code is confidential, not open to the public, and shall be for the exclusive use and information of the director in discharge of his or her duties." (See Unemp. Ins. Code, § 134 [defining director as the "Director of Employment Development"].) This statute also provides that "[a]ny person who knowingly accesses, uses, or discloses any confidential information without authorization is in violation of this section and is guilty of a misdemeanor." (Unemp. Ins. Code, § 1094, subd. (f).)

Here, there is no indication the Department was acting in an oversight or investigative capacity with respect to the records at issue. Instead, the record indicates the Department was serving as counsel for a public entity in one or more appeals of an unemployment benefits decision. Notably, petitioners do not address the significance, if any, of the lawyer-client privilege in resolving the issue of public accessibility to the records at issue. Moreover, they offer no meaningful analysis of whether Unemployment Insurance Code section 1094 presents a direct conflict with section 832.7. Because plaintiffs have not met their burden to affirmatively show error, we will not disturb the trial court's ruling on this point. (See *Blizzard Energy, Inc. v. Schaefers* (2021) 71 Cal.App.5th 832, 856.)

28

## DISPOSITION

Let a peremptory writ of mandate issue directing respondent court to vacate its judgment to the extent it denies petitioners' motion for judgment based on Government Code section 11183.  The matter is remanded to respondent court for further proceedings consistent with this opinion.  In all other respects, the petition for writ of mandate is denied.

The parties shall bear their own costs in this writ proceeding.  (Cal. Rules of Court, rule 8.493(a)(1)(B).)


_____
Fujisaki, Acting P.J.


WE CONCUR:


_____
Petrou, J.


_____
Rodríguez, J.

Trial Court:       City & County San Francisco Superior Court

Trial Judge:       Hon. Curtis E.A. Karnow

Counsel:       Law Office of Michael T. Risher, Michael T. Risher; Davis, Wright, Tremaine LLP, Thomas R. Burke, and Sarah E. Burns; California First Amendment Coalition, David Edward Snyder; First Amendment Coalition, John David Loy for Plaintiff and Petitioner

Rob Bonta, Attorney General of California, Thomas S. Patterson, Senior Assistant Attorney General, Mark R. Beckington, Supervising Deputy Attorney General, John D. Echeverria, Deputy Attorney General, and Natasha Saggar Sheth, Deputy Attorney General for Respondent and Real Party In Interest

*First Amendment Coalition v. Sup. Ct. Cnty. & City S.F. (A165888)*