Filed 12/30/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| BEAU REED,<br><br>        Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF SOLANO COUNTY,<br><br>        Respondent;<br><br>THE PEOPLE,<br><br>        Real Party in Interest. | A173339<br><br>(Solano County<br>Super. Ct. Nos. F25-00216,<br>F25-00429, F24-02766) |

In 2024, the voters passed Proposition 36, "The Homelessness, Drug Addiction, and Theft Reduction Act." (Prop. 36, as approved by voters Gen Elec. (Nov. 5, 2024) (Prop. 36).) Among other things, Proposition 36 added Health and Safety Code[1] section 11395, creating the offense of possession of a hard drug with two prior drug-related convictions and providing a postconviction treatment option for defendants who elect to plead guilty or no contest to a section 11395 charge. (§ 11395, subds. (b)(1), (c), (d)(1)–(2).)

The issue in this writ of mandate proceeding is whether a trial court has discretion to grant pretrial mental health

---

[1] All further statutory references are to the Health and Safety Code unless otherwise specified.

diversion under Penal Code section 1001.36 (hereafter, pretrial mental health diversion) to a defendant charged with violating section 11395. The People maintain that section 11395 precludes defendants charged thereunder from participating in pretrial mental health diversion as a matter of law. The trial court agreed and ruled that petitioner was ineligible for pretrial mental health diversion in two cases where he was charged solely under section 11395.

We conclude that a defendant charged under section 11395 is not precluded from participating in pretrial mental health diversion. We will direct the trial court to vacate its order denying petitioner's requests for pretrial mental health diversion and direct the court to reconsider petitioner's requests under Penal Code section 1001.36.

## BACKGROUND

This matter involves three criminal cases. In case No. F24-02766, petitioner was charged with possession for sale of a controlled substance (§ 11378) for an incident that occurred in May 2023. In case No. F25-00216, petitioner was charged with possession of a hard drug with two prior convictions (§ 11395, subd. (b)(1) (section 11395(b)(1))) for an incident that occurred on January 28, 2025. And in case No. F25-00429, petitioner was charged with possession of a hard drug with two prior convictions under section 11395(b)(1) for an incident that occurred on January 6, 2025.

Petitioner filed a motion for pretrial mental health diversion and for treatment pursuant to section 11395.

2

At the hearing on petitioner's motion, his counsel explained that, because not all of petitioner's pending charges qualified for treatment under section 11395, petitioner was requesting treatment under section 11395 and pretrial mental health diversion.  Counsel argued that petitioner qualified for pretrial mental health diversion as to all charges because he had a qualifying diagnosis and because he would be a suitable candidate.

The People responded that, because section 11395 applied "[n]otwithstanding any other laws," the drug treatment provision therein applied to petitioner's section 11395 offenses to the exclusion of pretrial mental health diversion.  The People further argued that section 11395 conflicted with Penal Code section 1001.36 because pretrial mental health diversion provided for a pre-conviction pathway that allowed defendants to avoid the need to enter a plea to be eligible for treatment under section 11395.

The court concluded that petitioner was not eligible for pretrial mental health diversion as to the two cases charging violations of section 11395.  The court reasoned, "Substance use disorder is a named mental health diagnosis in the [Diagnostic and Statistical Manual of Mental Disorders].  So there is a strong argument to be made that if you're kind of doing the Venn diagram, if you're eligible for treatment [under section 11395], you would automatically be eligible for [pretrial] mental health diversion as well, which would make the treatment mandated felony provision of 11395 moot and surplusage, and I don't find that to be the intent of the [L]egislature. [¶] I find that their

3

intent was that they recognize the societal problem and have tried to create a public policy direction to address this, and they did that after the implementation of [pretrial] mental health diversion. [¶] And so, I find that [section] 11395 takes precedence and notwithstanding any other law, but that's simply for the cases where 11395 is charged. I find [petitioner is] ineligible for [pretrial] mental health diversion in those cases." The court subsequently clarified that it was not ruling on the merits of petitioner's eligibility for pretrial mental health diversion on the section 11395 charges because pretrial mental health diversion was "barred by law" on those charges.

Petitioner's counsel then asked the court to rule on petitioner's suitability and eligibility for pretrial mental health diversion as to the section 11378 charge in case No. F24-02766, and the court granted petitioner's request for pretrial mental health diversion in that case.

After the trial court denied a motion for reconsideration, petitioner filed this petition for writ of mandate. We requested a preliminary opposition to the petition and issued an order to show cause why the relief requested in the petition should not be granted. We also granted permission to amici curiae, the Office of the State Public Defender, California Public Defenders Association, and California Attorneys for Criminal Justice, to file a brief in support of petitioner.

## DISCUSSION

The controlling issue in this writ proceeding — the interplay between section 11395 and Penal Code section 1001.36

4

— is a question of statutory interpretation subject to our de novo review. (*People v. Superior Court* (*Ortiz*) (2022) 81 Cal.App.5th 851, 862 (*Ortiz*).) We begin by describing the statutes at issue.

### A. Penal Code Section 1001.36

The Legislature enacted Penal Code section 1001.36 in 2018 to create a pretrial mental health diversion program for defendants with diagnosed mental health disorders. (Stats. 2018, ch. 34, § 24.)[2] Pretrial mental health diversion " 'allows for the suspension of criminal proceedings and potential dismissal of charges upon successful completion of mental health treatment.' " (*Vaughn v. Superior Court* (2024) 105 Cal.App.5th 124, 133; see Pen. Code, § 1001.36, subd. (f)(1) [" '[p]retrial diversion' means postponement of prosecution . . . at any point in the judicial process from the point at which the accused is charged until adjudication, to allow the defendant to undergo mental health treatment"].)

Pretrial mental health diversion requires findings that a defendant is eligible for diversion and suitable for the program. (*Sarmiento v. Superior Court* (2024) 98 Cal.App.5th 882, 891.) A defendant is eligible for pretrial mental health diversion if he or she has been diagnosed by a qualified mental health expert with a mental disorder "as identified in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders" (DSM) and that mental disorder was a significant factor in the

---

[2] The Legislature substantially amended Penal Code section 1001.36 in 2023. (Stats. 2023, ch. 687, § 1.2.) Our analysis rests on the current version of the statute.

commission of the criminal offense with which the defendant is charged. (Pen. Code, § 1001.36, subd. (b)(1)–(2).) A defendant is suitable if (1) a qualified mental health expert opines the mental disorder would respond to treatment, (2) the defendant agrees to waive speedy trial rights, (3) the defendant agrees to comply with treatment requirements, and (4) the defendant will not pose an "unreasonable risk of danger to public safety" as defined in Penal Code sections 1170.18 and 667, subdivision (e)(2). (Pen Code, § 1001.36, subd. (c)(1)–(4).) The statute also lists several charged offenses for which pretrial mental health diversion is not available. (*Id.* at subd. (d)(1)–(8).)

If the defendant performs satisfactorily in pretrial mental health diversion, at the end of the diversion period, the court shall dismiss the criminal charges and the arrest upon which the diversion was based shall be deemed never to have occurred. (Pen. Code, § 1001.36, subd. (h).) If the defendant does not successfully complete the program within the requisite time period (one year for a misdemeanor and two years for a felony), criminal proceedings can be reinstated. (Pen. Code, § 1001.36, subds. (f)(1)(C)(i)–(ii), (g).)

The Legislature has made clear that pretrial mental health diversion is to be applied as broadly as possible and a primary purpose of the statute is to keep eligible defendants from entering the criminal justice system. (See, e.g., *People v. Frahs* (2020) 9 Cal.5th 618, 632; *People v. Whitmill* (2022) 86 Cal.App.5th 1138, 1149.)

6

### B.  Section 11395

Proposition 36 added section 11395, establishing a new class of offenses known as "[t]reatment-[m]andated" felonies. (§ 11395, subd. (a) [article "shall be known and cited as the Treatment-Mandated Felony Act"].)

Section 11395(b)(1) provides, "Notwithstanding any other law, and except as provided in subdivision (d), a person described in subdivision (c) who possesses a hard drug . . . shall be punished by imprisonment in a county jail for not more than one year or pursuant to subdivision (h) of [s]ection 1170 of the Penal Code."[3]  A second conviction under the statute is punishable by imprisonment in the county jail not exceeding one year or by imprisonment in the state prison.  (§ 11395, subd. (b)(1).)  "A person shall not be sentenced to jail or prison pursuant to this section unless a court determines that the person is not eligible or suitable for treatment or that any other circumstance described in paragraph (4) of subdivision (d) applies to that person."  (*Id.* at subd. (b)(2).)

Section 11395(d)(1)(A) states, "In lieu of a jail or prison sentence, or a grant of probation with jail as a condition of

---

[3] "A person described in subdivision (c)" (§ 11395, subd. (b)(1)) is "a person who has two or more prior convictions for a felony or misdemeanor violation of Section 11350, 11351, 11351.5, 11352, 11353, 11353.5, 11353.7, 11370.1, 11377, 11378, 11378.5, 11379, 11379.5, 11379.6, 11380, or 11395, including a conviction that occurred before the effective date of this section." (§ 11395, subd. (c).)  In addition, section 11395, subdivision (e)(1)–(2) defines " 'hard drug' " for purposes of the statute.

probation, a defendant charged with a violation of this section may elect treatment by pleading guilty or no contest to a violation of this section and admitting the alleged prior convictions, waiving time . . . , and agreeing to participate in, and complete, a detailed treatment program developed by a drug addiction expert and approved by the court."

"Upon or subsequent to arraignment for a violation of this section, and at the request or with the consent of the defendant or their attorney, the court shall order a drug addiction expert to conduct a substance abuse and mental health evaluation of the defendant. The expert shall submit a report of the evaluation to the court and parties. . . . The evaluation shall detail the defendant's drug abuse or mental health issues, if any, so the court and parties may better determine appropriate handling of the defendant's case." (§ 11395, subd. (d)(1)(B).) The "treatment program may include, but is not limited to, drug treatment, mental health treatment, job training, and any other conditions related to treatment or a successful outcome for the defendant that the court finds appropriate." (*Id.* at subd. (d)(2).)

Upon a defendant's successful completion of the treatment program, the court shall dismiss the charge and "the provisions of [s]ection 1000.4 of the Penal Code" shall apply, including the provision that the arrest upon which the defendant was deferred shall be deemed to have never occurred. (§ 11395, subd. (d)(3).) If the defendant's performance in the program is unsatisfactory, sentencing and judgment may be imposed; however, the

defendant may alternatively be referred again to treatment under certain circumstances. (*Id.* at subd. (d)(4).)

Section 11395 also provides, "This section shall not be construed to preclude prosecution or punishment pursuant to any other law." (§ 11395, subd. (g).)

## C. *Governing Legal Principles*

The People maintain that "[s]ection 11395 unambiguously makes its treatment path exclusive, foreclosing mental health diversion under Penal Code section 1001.36 for a treatment-mandated felony." They contend that section 11395 does so by stating that "it applies '[n]otwithstanding any other law.'" Petitioner, on the other hand, argues that section 11395(b)(1)'s "[n]otwithstanding any other law" language applies only to subdivision (b)(1) and does not apply to the treatment provisions set forth in separate subdivision (d). Petitioner further maintains that section 11395 does not expressly preclude a court from granting pretrial mental health diversion to a defendant charged under section 11395. Our resolution of the parties' dispute proceeds under the following well-established rules.

In interpreting a voter initiative, we apply the principles of statutory construction. (*Professional Engineers in California Government v. Kempton* (2007) 40 Cal.4th 1016, 1037.) "'Thus, "we turn first to the language of the [initiative], giving the words their ordinary meaning." [Citation.] The [initiative's] language must also be construed in the context of the statute as a whole and the [initiative's] overall . . . scheme.' [Citation.] 'Absent ambiguity, we presume that the voters intend the meaning

9

apparent on the face of an initiative measure [citation] and the court may not add to the statute or rewrite it to conform to an assumed intent that is not apparent in its language.' [Citation.] Where there is ambiguity in the language of the measure, '[b]allot summaries and arguments may be considered when determining the voters' intent and understanding of a ballot measure.' " (*Ibid.*) Our fundamental task is to determine the voters' intent and to effectuate the law's purpose. (*Ibid.*)

When assessing whether a statute has repealed another statute, we first examine the statutory texts to determine whether they conflict. (*State Dept. of Public Health v. Superior Court* (2015) 60 Cal.4th 940, 956 (*State Dept. of Public Health*).) "It is incumbent upon courts to harmonize statutes based on their texts, if that can reasonably be done. ' " 'A court must, where reasonably possible, harmonize statutes, reconcile seeming inconsistencies in them, and construe them to give force and effect to all of their provisions. [Citations.] This rule applies although one of the statutes involved deals generally with a subject and another relates specifically to particular aspects of the subject.' [Citation.] Thus, when ' "two codes are to be construed, they 'must be regarded as blending into each other and forming a single statute.' [Citation.] . . . [T]hey 'must be read together and so construed as to give effect, when possible, to all the provisions thereof.' " ' " ' " (*Ortiz, supra*, 81 Cal.App.5th at p. 863.) "Statutes cannot be harmonized unless 'full effect' can be given to all of their provisions." (*Id.* at p. 872.)

10

Further, all presumptions are against interpreting a statute to repeal another by implication. (*Ortiz*, *supra*, 81 Cal.App.5th at p. 863.) " ' " ' "Absent an express declaration of legislative intent, a court will find an implied repeal 'only when there is no rational basis for harmonizing the two potentially conflicting statutes [citation], and the statutes are "irreconcilable, clearly repugnant, and so inconsistent that the two cannot have concurrent operation." ' " ' " ' " (*Ibid.*) "Courts have also noted that implied repeal should not be found unless '. . . the later provision gives *undebatable evidence* of an intent to supersede the earlier . . . .' " (*Western Oil & Gas Assn. v. Monterey Bay Unified Air Pollution Control Dist.* (1989) 49 Cal.3d 408, 420 (*Western Oil*).)

### D.   Analysis

Starting with the statutory texts (*State Dept. of Public Health*, *supra*, 60 Cal.4th at p. 956), we conclude that section 11395 does not expressly preclude a trial court from granting pretrial mental health diversion to defendants charged with violating section 11395.

We first observe that section 11395 does not expressly state that defendants charged thereunder are precluded from participating in pretrial mental health diversion. Section 11395 creates a postconviction drug treatment program (§ 11395, subd. (d)(1)(A), (2)), and it would have been very easy for the voters to state that this treatment path was to the exclusion of pretrial mental health diversion had that been their intent. But section 11395 does not mention Penal Code section 1001.36. (Cf.

11

*Schatz v. Allen Matkins Leck Gamble & Mallory LLP* (2009) 45 Cal.4th 557, 573 [making similar observation regarding provisions of statutes at issue and finding the Mandatory Fee Arbitration Act (Bus. & Prof. Code, § 6200 et seq.) did not partially repeal the California Arbitration Act (Code Civ. Proc., § 1280 et seq.)].)  Nor did Proposition 36 amend Penal Code section 1001.36 to include a charge under section 11395 in the list of charged offenses for which pretrial mental health diversion is unavailable.  (Pen. Code, § 1001.36, subd. (d)(1)–(8).)

Next, although section 11395(b)(1)'s use of the phrase "[n]otwithstanding any other law" declares voter "intent to override all *contrary* law" (*People v. Fuentes* (2016) 1 Cal.5th 218, 227), this language overrides only laws that conflict with that specific subdivision.  The clause "[n]otwithstanding any other provision of law, and except as provided in subdivision (d), a person . . . who possesses a hard drug . . . shall be punished," is most naturally read as setting forth section 11395's prescribed punishment for a defendant convicted of violating the statute — to wit, county jail for less than one year or imprisonment pursuant to Penal Code section 1170, subdivision (h) for a first conviction and county jail or prison for a second conviction.  This language expresses the voters' clear intent that section 11395(b)(1) prevail over conflicting laws that would otherwise prohibit felony punishment for drug possession.  (E.g., §§ 11350, subd. (a), 11377, subd. (a).)  And the language "except as provided in [section 11395(d)]" expresses a clear intent that a defendant convicted by plea be afforded the option of avoiding sentencing by

electing postconviction drug treatment.  (§ 11395, subds. (b)(1), (d)(1)(A), (2).)  But section 11395 does not, as the People contend, provide that the treatment path described in section 11395(d) is the exclusive treatment path available to a defendant charged under section 11395 or even that section 11395(d)'s treatment path applies " '[n]otwithstanding any other law.' "

Turning to Penal Code section 1001.36, we find it does not conflict with section 11395(b)(1) because, as the People concede, Penal Code section 1001.36 does not proscribe punishment or operate postconviction.  " 'Pretrial diversion' means the postponement of prosecution, either temporarily or permanently, at any point in the judicial process from the point at which the accused is charged until adjudication, to allow the defendant to undergo mental health treatment."  (Pen. Code, § 1001.36, subd. (f)(1).)  This pretrial mental health diversion can only be granted before conviction.  (*People v. Braden* (2023) 14 Cal.5th 791, 800 [request for pretrial mental health diversion must be made before attachment of jeopardy at trial or entry of a guilty or no contest plea, whichever occurs first].)  Because pretrial mental health diversion occurs before conviction and the treatment or punishment contemplated in section 11395 occurs only after conviction, the plain text of the two statutes can, and therefore must, be read to coexist.  (*State Dept. of Public Health*, *supra*, 60 Cal.4th at pp. 955–956 [requiring harmonization of statutes where possible].)

The People next argue that section 11395(d)(1)(A) states that a defendant may " 'elect treatment' " under its provisions, so

13

"the sole path to 'elect treatment' open to a [defendant] charged with violating section 11395" is through section 11395(d)(1)(A) and such a defendant "cannot 'elect treatment' " under Penal Code section 1001.36. But as we previously observed, section 11395 does not state that defendants charged thereunder are ineligible for pretrial mental health diversion, nor does it state that treatment under section 11395(d) is the sole treatment path available. The People thus impermissibly seek to add language of exclusivity into section 11395(d)(1)(A) where none exists. (*State Dept. of Public Health*, *supra*, 60 Cal.4th at p. 956 [courts are not authorized to rewrite statutes].) And while it is true that a defendant must plead guilty or no contest to elect treatment under section 11395(d)(1)(A), this fact does not assist the People. The question before us is not how a defendant elects postconviction treatment under section 11395(d)(1)(A), but whether section 11395 precludes a defendant charged thereunder from participating in pretrial mental health diversion.

The People also argue that section 11395's postconviction treatment cannot practically coexist with treatment under Penal Code section 1001.36, but we must disagree. Unlike Penal Code section 1001.36, section 11395 does not require that a defendant have a DSM-diagnosed mental health disorder to elect treatment thereunder. (Compare § 11395, subd. (d)(1)(A) & Pen. Code, § 1001.36, subd. (b)(1).) Section 11395's treatment provisions thus indisputably apply to defendants who do not qualify for pretrial mental health diversion. The People state that "[m]any defendants charged with possession of a 'hard drug' . . . would

14

likely qualify for mental health diversion because they likely would have a substance use disorder [under the DSM]," and those defendants would first elect treatment under Penal Code section 1001.36, delaying treatment under section 11395. While there will certainly be defendants charged under section 11395 who have a DSM-diagnosable substance use disorder, one can also easily imagine a situation where a defendant charged under section 11395 has two prior drug-related convictions (for possession for sale, for example) but has no diagnosable DSM substance use disorder.[4] And treatment under section 11395 would remain an option for any defendant who has a DSM-diagnosed disorder but who does not complete pretrial mental health diversion. Because both statutes can coexist, we are bound to allow them to stand together. (*State Dept. of Public Health, supra*, 60 Cal.4th at p. 955.)

Finally, the People urge us to conclude from extrinsic materials that the electorate intended for section 11395's treatment provisions to supplant pretrial mental health

---

[4] The People do not discuss the criteria for diagnosis of any substance use disorder under the DSM. Our high court has summarized that the essential feature of such a disorder (as of the DSM version operative as of 2022) is " 'a cluster of cognitive, behavioral, and physiological symptoms indicating that the individual continues using the substance despite significant substance-related problems.' " (*In re N.R.* (2023) 15 Cal.5th 520, 541–542 & fn. 10.) Stimulant use disorders, for example, are " '[a] pattern of amphetamine-type substance, cocaine, or other stimulant use leading to clinically significant impairment or distress, as manifested by at least two of 11 identified criteria over a 12-month period.' " (*Id.* at p. 542.)

15

diversion. Specifically, the People contend that the electorate partially repealed Penal Code section 1001.36 in an " 'out with the old and in with the new' approach to the intertwined problems of inadequately incentivized treatment and 'dramatically increased . . . drug addiction' under laws that needed to be 'reform[ed].' " We may consider voter information materials and uncodified provisions of an initiative to construe an ambiguous statute. (*People v. Rizo* (2000) 22 Cal.4th 681, 685; *California Advocates for Nursing Home Reform v. Smith* (2019) 38 Cal.App.5th 838, 902.) But even if we were to find section 11395 ambiguous, the extent to which the extrinsic materials the People rely upon support their position is arguable at best for the reasons explained below.[5]

Proposition 36's voter information guide provides background regarding the difference between felony and misdemeanor punishment and explains, "Proposition 47 changed some theft and drug crimes from felonies to misdemeanors. For example, shoplifting . . . and drug possession generally became misdemeanors." (Ballot Pamp., Gen. Elec. (Nov. 5, 2024) analysis of Prop. 36 by Legis. Analyst, pp. 58, 59.) The voter information guide then states that Proposition 36 proposes to make key

---

[5] Petitioner seeks to buttress his position with extrinsic materials regarding the meaning of section 11395 as well, but he relies on information prepared *after* the enactment of Proposition 36. As these materials were not before the voters, we do not consider them. (See *People v. Valencia* (2017) 3 Cal.5th 347, 364 [in considering evidence outside of initiative's provisions to ascertain voter intent, courts should examine materials that were before the voters].)

changes "related to punishments for theft and drug crimes" by increasing punishment — specifically, by turning some drug crimes from misdemeanors into felonies and by creating a new treatment-focused court process for some drug possession crimes. (*Id.* at pp. 59, 62.)  "Proposition 36 allows people who possess illegal drugs to be charged with a 'treatment-mandated felony,' instead of a misdemeanor, in some cases. . . . These people would generally get treatment, such as mental health or drug treatment.  Those who finish treatment would have their charges dismissed.  Those who do not finish treatment could serve up to three years in state prison.  This change undoes some of the punishment reductions in Proposition 47." (*Id.* at pp. 59–60.)

Proposition 36's uncodified "Purpose and Intent" provision states that the initiative sought to "reform laws that have dramatically increased homelessness, drug addiction, and theft" and "provide drug and mental health treatment for people who are addicted to hard drugs."  (Ballot Pamp., *supra,* text of Prop. 36, p. 126.)  The "Findings and Declarations" describe a "tipping point" in California's homelessness, drug, mental health, and theft crises (*id.* at p. 127), and state, "Since the passage of Proposition 47 in 2014, homelessness in California has increased by 51 percent, while during the same time period in the rest of the country, it has declined by 11 percent.  Proposition 47 reduced the legal consequences of both possession of hard drugs . . . and theft.  The result has been massive increases in drug addiction, mental illness, and property crimes . . . committed by addicts to support their addiction.  At

17

the same time, California has seen a dramatic decrease in mental health and drug treatment for homeless people due to reduced incentives to participate in treatment." (*Ibid.*)

Proposition 36's "Findings and Declarations" conclude that the initiative "takes a modest step in the direction" of states with harder drug laws by enacting a "new class of crime called a 'treatment-mandated felony.' " (Ballot Pamp., *supra,* text of Prop. 36, p. 127.) Prosecutors "would have the discretion to charge a felony for hard drug possession after two previous drug convictions," and "the offender would be given the option of participating in drug and mental health treatment. If the offender successfully completes drug and mental health treatment, the charge would be fully expunged, and the offender would receive no jail time. If the offender refuses drug and mental health treatment, they would serve jail time for hard drug possession." (*Ibid.*)

The above-described extrinsic materials do not meet the high standard required for us to conclude that the voters intended to partially repeal Penal Code section 1001.36. We can discern from these materials the voters' clear intent for Proposition 36 to counteract the perceived problems stemming from Proposition 47 (as approved by voters, Gen. Elec. (Nov. 4, 2014)) by creating a new crime of possession of a hard drug with priors that has felony consequences. We can also discern a clear intent for Proposition 36 to create a new postconviction treatment path for defendants charged under section 11395. However, as amici curiae accurately observe, the information provided to the

18

voters does not mention Penal Code section 1001.36 or discuss the efficacy of pretrial mental health diversion. And to the extent that the voter information materials relay concerns regarding "reduced incentives to participate in treatment," they directly link these reduced incentives to Proposition 47's classification of drug possession crimes as misdemeanors, not to flaws in existing pretrial mental health diversion treatments. Considering all this, we cannot conclude the extrinsic materials relied on by the People provide the requisite "*undebatable evidence*" (*Western Oil & Gas Assn.*, *supra*, 49 Cal.3d at p. 420) that the voters intended to partially repeal Penal Code section 1001.36.

Accordingly, we conclude that trial courts retain discretion to grant requests for pretrial mental health diversion under Penal Code section 1001.36 to defendants charged with violating section 11395.

## DISPOSITION

Let a peremptory writ of mandate issue directing respondent superior court to vacate its order denying petitioner's requests for pretrial mental health diversion in case No. F25-00216 and in case No. F25-00429. On remand in these cases, the superior court shall exercise its discretion to determine whether to grant petitioner's requests for pretrial mental health diversion under Penal Code section 1001.36.

BROWN, P. J.

19

WE CONCUR:

GOLDMAN, J.
MOORMAN, J.*

*Reed v. Superior Court*  (A173393)

---

Trial Court:          Solano County Superior Court

Trial Judge:          Hon. William J. Pendergast, III

Counsel:              Thomas Barret and Syeddah Naqvi, Deputy Alternate
                      Public Defenders for Petitioner.

                      Galit Lipa, State Public Defender, Ashanti Mitchell, Jason
                      Gundel and Teresa DeAmicis, Deputy State Public
                      Defenders as Amicus Curiae on behalf of Petitioner.

                      Rob Bonta, Attorney General, Lance Winters and Jeffrey
                      M. Laurence, Assistant Attorneys General, Seth K. Schalit
                      and Lisa Ashley Ott, Deputy Attorneys General for
                      Respondent and Real Party in Interest